ANTJE STOLENBURG, Appellant, v. THEODORE DIERCKS, Administrator.

Releases: CONSTRUCTION: *"Inheritance" and "estate"*. A married daughter, on leaving Germany, where her parents intended to remain, in consideration of an "advance cash payment" of a certain sum, executed a release of her "inheritance" in her father's and mother's "estate," which recited that she was paid perfectly and wholly to her entire satisfaction, and that she had

no claim after the possible death of her parents in any way from the estate of either. *Held*, that, in view of the situation of the parties, the evident object of the release, and the absence of any showing that the parents had any property, or of its kind, the words "inheritance" and "estate" would not be construed in their narrower sense as referring exclusively to realty, but would be taken as referring to personal property also; thus making the release a relinquishment of all claim to property of every kind left at death by either parent.

Scope of operation: The right to inheritance or succession not being dependent on contract, but being derived from positive law, and contracts, relating to such right being necessarily in contemplation of future property rights, the rule applicable to ante-nuptial contracts, which relate to contractual and present property rights, limiting their operation to the country of the domicile of the parties, was not applicable to the release, which related solely to the contingency of the ancestors having property at their death and their inclination not to divert it from the statutory modes of descent, and the operation thereof was not limited to the estate of the ancestors in Germany.

Evidence: *Personal transactions with decedent.* Where a husband and wife, in consideration of an advancement to the wife from her parents, signed a release of the wife's claim to inheritance from her parents, in a suit for such inheritance after the death of the parents, testimony of the husband as to whether there was any talk at the time of the execution of the release about releasing the wife's claim to her father's estate forever, and whether anything was said by the wife or her father about not having time to read the release over, was inadmissible as being of a "personal transaction" with deceased persons to which the husband was a party, though no property right was there affected.

*Recital of consideration.* Where an instrument executed by a husband and wife, just before leaving Germany, where the wife's parents resided, purported to release her inheritance in her parent's estate for a recited money consideration, the testimony of the husband that at the time the instrument was signed the father explained that he was not likely to come to the United States, and might never see them again; that nothing had ever been said about signing the instrument before that time; and that the father did not pay her any money at the time, but had given her a certain sum, the amount of the recited consideration, three days before,—was not sufficient to overcome the recital of consideration in the release.

*Appeal from Cerro Gordo District Court.*—HON. CLIFFORD
P. SMITH, Judge.

THURSDAY, MAY 15, 1902.

EGGERT F. DIERCKS died intestate July 25, 1899, leaving,
him surviving, as his only heirs, his sons, Theodore and
John Diercks, and a daughter, Antje Stolenburg, and two
grandchildren, Oscar and Dora Diercks, children of a
deceased son, Claus H. Diercks.

The final report of the administrator, filed September
28, 1900, disclosed that the personal property of the
deceased had been reduced to money; that he held $5,582.90
for distribution; and averred that said grandchildren were
not entitled to any of this amount, because of their father,
Claus H. Diercks, having, in consideration of $1,000 paid
by deceased, relinquished all claim to his estate, and also
that Antje Stolenburg and her husband had executed in
Germany, August 29, 1865, a paper, the agreed translation
of which reads: "I, the undersigned, wife of Claus Hein-
rich Stolenburg, born Diercks, from Linden, Kirch-
spiels Hennstedt, in Northern Dithmarschen, hereby
declare that I, expecting to emigrate to America on
this day, have received from my father, Eggert Frederick
Diercks, in Linden, in advance cash payment, the sum of
400 marks, for the reception of which I hereby release in
the firmest manner, of the inheritance by my father, the
head of the family, Eggert Frederick Diercks, in Linden,
Kirchspiels Hennstedt, and by my mother, Antje Diercks,
born Hansen, of the same place, perfectly and wholly to
my entire satisfaction, am paid, so that I have no claim
after the possible death of my named parents, in no way,
whether from my father's or my mother's estate. This
declaration I have fully considered, and without any
reservation executed, and in consideration of any and all
objections against it that could be thought of, escapes and

excuses, which might be properly named in any way. Also in consideration of the objection that a general release would be of no binding force in case not especially mentioned heretofore, or signed under my hand, or not attested. by mine and my husband's signature. This is done in my presence in Rendsburg, the 29th day of August, 1865. (Signed) Antje Stolenburg, born Diercks; Claus Heinrich. Stolenburg, husband." The administrator asked that Theodore and John Diercks be declared entitled to the entire estate of deceased. September 26, 1900, Antje Stolenburg, in a petition duly filed, denied that her right to participate in the estate of her deceased father had been cut off by the above instrument, and alleged that in 1865, when about to emigrate with her husband to this country, the deceased gave her, at his home, before the beginning of the journey the sum of 400 marks, with which to pay her passage to the United States; that on the day the instrument was executed he took herself and husband to the railway train, 16 miles distant, and shortly before the train time, to a lawyer's office, where said paper was prepared and signed; that she would not have signed it had she understood its import, and was induced to do so by the misstatements of deceased; that the contract was without consideration. She asked that she be allowed a distributive share in the estate, less the advancement of the sum paid her in Germany. On the trial this petition was treated as an objection to the final report, and, as a share in the estate was denied her, she appeals.—*Affirmed.*

*Glass, McConlogue & Witmer* for appellant.

*F. A. Kirschman* for appellee.

LADD, C. J.—In the paper executed in Germany in 1865, Antje Stolenburg stipulated that "I hereby release in the firmest manner the inheritance by my father, * * *

and by my mother, Antje Diercks, * * * perfectly and wholly to my entire satisfaction, am paid, so that I have no claim after the possible death of my named parents, in no way, whether from my father's or my mother's estate." The appellant insists that the word "inheritance," as here used, should be accorded a purely technical meaning, and limited, in its application, to land only. While, in the strict legal signification of the term as formerly employed, and as may now appear when so intended, it refers to the devolution of realty, yet, as has been often held, in its popular acceptation personal property also is included, and in meaning it is as broad as the word "succession." 24 Am. & Eng. Enc. Law, 345; *Horner v. Webster*, 33 N. J. Law, 387; *Swanson v. Swanson*, 2 Swan, 460; *Adams v. Akerlund*, 168 Ill. 632 (48 N. E. Rep. 455); *Fort v. West*, 14 Wash. 10 (44 Pac. Rep. 104); *In re Donahue's Estate* 36 Cal. 329. In *Fort v. West*, *supra*, the court said: "The old-time refined or sentimental reason for the distinction drawn from the descent of lands and the descent of personal property does not exist in this country. When the rule originated, real estate did not exchange hands as frequently as it does at the present day with us, but was usually kept in the same family, on the male side, from generation to generation. Here land is looked upon more as a commodity, and a common subject of bargain and sale. Titles pass frequently, and owners are continually changing. Also a more extended meaning has been given by courts to the word 'inheritance' in some instances." Referring to "heirs" and "inheritance", the court, in *Adams v. Akerlund*, said: "These words, in their strict common-law signification, refer only to descent or devolution of real property; but in their broader signification they include both real and personal property." The meaning to be given "inheritance" as used necessarily depends on the intention of the parties, as gathered from the entire instrument. The evident pur-

pose was the relinquishment of any claim to the estate of
her parents upon their decease. What that estate con-
sisted of does not appear, and the word is used apparently
without limitation. It is sufficiently comprehensive to
embrace property of every description. *Archer v. Deneale*,
1 Pet. 585 (74 L. Ed. 272); *Deering v. Tucker*, 55 Me. 284;
*Bates v. Sparrell*, 10 Mass. 323, 330; *Den v. Snitcher*, 14
N. J. Law, 53; *Jackson v. Robins*, 16 Johns. 537; 11 Am. &
Eng. Enc. Law, 656. In its narrower and technical meaning,
estate is the degree, quantity, nature, and extent of inter-
est which one has in real property. Bouvier Law Diction-
ary 605. When so used, however, the character of the
interest is ordinarily described as an estate in fee, in com-
mon, or the like. If employed without indicating the
kind of estate, or referring to particular property, then it
includes, according to the approved usage of the language,
both personal and real property,—property of all kinds
which a person leaves at death. In view of the situation
of the parties,—the daughter about to leave the fatherland
forever, the purpose of the parents to remain, the absence
of any showing that the parents then had property, or of
its kind, if had,—together with the evident object of the
instrument, we are of the opinion that the intention had
was the relinquishment of all claim to property of every
kind left at death by either parent.

II. Appellant also contends that the instrument
should be limited in its operation to the estate of the de-
ceased in Germany. Not a word contained therein indi-
cates such a purpose, and we can think of no
principle justifying such a construction. Appellant
relies on decisions limiting the effect of ante-nuptial
contracts made in other countries. These proceed on the
theory that in marrying the parties thereto, by tacit
agreement, adopt the laws of the matrimonial domicile
relating to property rights, the same as though such laws
were inserted into the marriage contract; that this tacit

agreement is binding so far as these laws extend, that is, throughout that country, and no further; that, in entering into an ante-nuptial contract modifying the rights to be so conferred, the parties are presumed to have in mind this tacit agreement, and in the absence of anything indicating a contrary intention, to contract concerning their property rights with reference to the country of their domicile only. *Saul v. His Creditors*, 5 Mart. N. S. 569, (16 Am. Dec. 212), *Castro v. Illies*, 22 Tex. 479 (73 Am. Dec. 277); *Long v. Hess*, 154 Ill. 482 (40 N. E. Rep. 335, 27 L. R. A. 791, 45 Am. St. Rep. 143). But the right to inheritance or succession does not rest on the contract, but is derived from positive law, and in entering into contracts like that in question the heir or distributee inevitably contemplates, not present property rights, but those likely to arise in the future. Plaintiff had no legal claim to any interest in the estate of her parents when she executed the agreement, and the clear distinction between it and ante-nuptial contract is that the latter modifies existing interests, while the former relates merely to a probable right, not present but solely contingent on the ancestors having property at the time of decease and their inclination not to divert it from the statutory modes of descent.

III. The authorities seem to hold that such contracts may be set aside when procured by fraud or undue influence. *Brown v. Brown*, 139 Ind. Sup. 653 (39 N. E. Rep. 152). But no evidence of either was introduced. No question is made but that the testimony of appellant was properly rejected. It is insisted, however, that that of her husband should have been received. The contract was signed by him as well as her, and, regardless of whether it affected any property right he might acquire, was a transaction between both of them and deceased. The statute excludes evidence of any "personal transaction", and is not limited to those which may affect the rights of

a party connected with it. He was asked: "Q. Was there any talk between them at that time about releasing her claim to her father's estate forever? Q. Was there anything said by your wife or her father that did not have time to read it over? These called for facts bearing on the signing of the paper by him as well as her, and directly involved a transaction to which he was a party. For this reason the cases in which either the husband or wife is allowed to testify concerning a transaction had solely with the other are not applicable. See *Dettmer v. Begreus* 106 Iowa, 585, and cited cases.

IV. It will be observed that the instrument mentions, as the consideration for its execution, the payment of 400 marks, and such an amount was given the daughter three days previous. Her husband testified, without objection, that the paper was signed at Rendsburg, Germany; that at the time deceased explained that he was not likely to come to the United States, and might never see them again; that nothing "had ever been said about signing the said instrument before that time"; that "her father did not pay her any money at that time; he gave her the 400 marks three days before." As no objection was interposed, this testimony was competent. *Burdick v. Raymond*, 107 Iowa, 228. It fails, however, to overcome the presumption and the recital of a consideration. His statement that nothing had ever been said about signing the paper before that time can amount to no more than that he had heard nothing of the kind. But, even if true, it does not follow that the consideration was not paid on the conditions therein stated, and, if so, these, when evidenced in writing, would rest on precisely the same basis. The record is without error.—AFFIRMED.