THE CITY OF CHARLES CITY, IOWA, Appellee, v. THE SURETY TRUST & SAVINGS BANK, Garnishee, C. H. COLLINS, Administrator of C. P. COLLINS, Appellant.

**Exemptions:** PURCHASE OF PROPERTY WITH PENSION MONEY: EVIDENCE. 1 Title to the homestead may be held by the wife in trust for her husband, and where such is the case and the property was purchased with pension money belonging to him, the proceeds arising from a sale thereof are exempt to him as against the claims of his creditors; but in the instant case the evidence is held to support a finding, that although the property was acquired with pension money, the husband, gave it to his wife, and that upon her death he acquired title by electing to take his distributive share therein and by a deed to the remaining interest, and the proceeds were, therefore, not exempt to him.

**Costs:** COLLECTION: FEE-BILL EXECUTION. The party in whose favor 2 a judgment for costs has been entered, is not required to pay all the costs before he can have a fee-bill execution issued; but he is entitled to its issuance for such costs as are due him, and it is the duty of the clerk to include all costs.

*Appeal from Floyd District Court.*—HON. C. H. KELLEY, Judge.

TUESDAY, MARCH 16, 1909.

REHEARING DENIED FRIDAY, JULY 2, 1909.

THIS is a controversy arising from a garnishment proceeding against C. P. Collins, as judgment debtor. The Security Trust & Savings Bank was garnished as his supposed debtor. Its answer disclosed that it held funds of the judgment debtor on deposit. The debtor claimed that these funds were exempt from execution. Upon such issue a trial was had and judgment entered against the garnishee. The defendant debtor appeals.—*Affirmed.*

*Frank Lingenfelder*, for appellant.

*J. C. Campbell*, for appellee.

EVANS, C. J.—In 1900 C. P. Collins brought an action against the city of Charles City, which resulted in his defeat and a judgment against him for costs. In November, 1907, the city secured a fee-bill execution and levied the same by garnishment of the bank above named. The answers of the bank disclosed that it had funds of the defendant on deposit to the extent of $340. Collins filed a pleading in the garnishment proceedings, claiming the funds exempt from execution on the ground that they consisted in part of pension money, and in the remaining part of the proceeds of his homestead which had been purchased with pension money. It appears from the evidence that, a short time prior to these proceedings the plaintiff had sold his homestead, consisting of a house and two lots, for $950. Of this sum about $600 was applied to the discharge of incumbrances. The first of the two lots in question was purchased by the defendant about twenty years ago, and the other some time later. The first and only payment on each lot consisted of $100, and this was pension money in each case. The rest of the purchase price was carried in the form of incumbrances. Of these incumbrances $137 was paid by services rendered by defendant to a mortgage holder

1. EXEMPTIONS: purchase of property with pension money: evidence.

and applied on the mortgage. The remaining incumbrances were carried upon the property until .the time of the sale thereof. At the time of the purchase of each lot, Collins took the title in the name of his wife, and she held such title up to the time of her death, which occurred about two years before this proceeding. After the death of the wife, Collins obtained a quitclaim deed from her only heir, an adopted daughter. He thus became vested with the legal title. Collins testified on the trial that, in addition to the $600 paid by him to discharge incumbrances on the homestead for the purpose of sale, he paid out a considerable portion of the purchase money upon other debts, and that $205 or $210 of the money on deposit in the bank was pension money actually received by him as such and deposited in his account, and that the balance was the proceeds of his homestead. The trial court found against the defendant on the claim that any part of the funds on deposit consisted of pension money, but found that all such funds were the proceeds of the sale of his homestead. It also found that the homestead was owned by his wife in her lifetime, and that plaintiff's title thereto was acquired by the quitclaim deed from the adopted daughter and by his own election to take his distributive share, and that the proceeds of the sale were therefore not exempt to him from execution.

The evidence in the record is sufficient to sustain this finding by the lower court, and we are bound by it. Upon the state of facts so found, the legal conclusions arrived at by the trial court are inevitable. Appellant's argument is based upon an alleged state of facts quite at variance with the findings of the lower court. The lower court did find that the purchase of the lots constituting the homestead was made by defendant with pension money, but it also found that he gave the property to his wife, as he had a right to do. The argument of appellant is that the homestead belonged to the defendant, even though he held it in the name

of his wife, and that this fact was recognized by the adopted daughter when she quitclaimed to him her interest without consideration. It is doubtless true that the fact that defendant took title to the homestead in the name of his wife was not necessarily inconsistent with his claim of ownership. The title might be so held by the wife in resulting trust for her husband. If such a case had been made here, we would have no trouble in holding that the property never lost its character as property purchased with pension money, and that the quitclaim deed by the adopted daughter was a recognition of such resulting trust, and that the proceeds thereof would be exempt to the defendant. The difficulty with appellant's position is that he did not plead such state of facts, nor did he offer any evidence to that effect. The only evidence tending to support such theory is the fact that the adopted daughter quitclaimed to the defendant without consideration.

II. It is earnestly contended by appellant that the city of Charles City had no authority to cause a fee-bill execution to issue, because it had not paid the costs that were taxed up against Collins and had no interest therein. It appears from the record that it had paid certain items of costs made in its own behalf to the amount of $6.70. Under the provisions of section 1299 of the Code, therefore, it had a right to demand the issuance of a fee-bill execution. Upon such demand it was the duty of the clerk to include all costs. It is immaterial that the party demanding the execution is entitled to only a part of the costs. The collection of the execution inures to the benefit of all parties entitled to such costs.

2. Costs: collection: fee-bill execution.

Upon the whole record in this case we would not be warranted in finding the facts otherwise than the finding of the trial court. Upon the facts so found its legal conclusions were right, and its judgment must be *affirmed*.