ANNIE ZARUBA BLAKELY, Appellant, v. JOHN CABELKA, Appellee.

**APPEAL AND ERROR:** Harmless Error—Non-injurious Ruling. In an attempt to prove the *unsoundness* of mind of a testator, the striking of portions of a hypothetical question becomes inconsequential when

the witness answers that, in his opinion, the testator was of *unsound* mind.

**APPEAL AND ERROR:** Harmless Error—Striking Preliminary Question. The striking of a purely preliminary question is harmless when the substantive question is not asked.

**APPEAL AND ERROR:** Reservation of Grounds—Insufficient Record. The exclusion of a transcript of the testimony of a witness on a former trial may not be reviewed on a record which fails to show affirmatively that the transcript was offered in evidence, or what matter was contained therein.

**TRIAL:** Instructions—Construction as a Whole. An instruction which contains a statement which, standing alone, would be incorrect, may be rendered perfectly proper by a subsequent limiting statement in the same instruction.

**APPEAL AND ERROR:** Assignment of Error—Fatal Generality. An assignment of error to the effect that ''the court erred in overruling a motion for a new trial and exceptions to instruction'' is fatally insufficient because of its generality.. (See Book of Anno., Vol. 1, Sec. 12869, Anno. 34 *et seq.*)

**WILLS:** Testamentary Capacity—Instructions—''Comprehending Legal Form.'' The court should not say to a jury that ''testator need not be able to comprehend the provisions of his will in their legal form.''

**TRIAL:** Instructions—Province of Court and Jury—Materiality of Testimony. An instruction is prejudicially erroneous which directs the jury to disregard expert·opinion testimony elicited through hypothetical questions which contain *material* statements which are not proved or which fail to contain *material* facts which are proved. (See Book of Anno., Vol. 1, Sec. 11493, Anno. 143 *et seq.*)

**TRIAL:** Province of Court and Jury—Unallowable Contrasting of Testimony. The court may not say to a jury, as a matter of law, that the testimony of regular attending physicians of a deceased has greater weight than the testimony of experts based solely on hypothetical questions. (See Book of Anno., Vol. 1, Sec. 11493, Anno. 85 *et seq.*)

Headnote 1: 4 C. J. p. 967 (Anno.) Headnote 2: ''4 C. J. p. 1003 (Anno.) Headnote 3: 3 C. J. p. 827. Headnote 4: 38 Cyc. p. 1779. Headnote 5: 3 C. J. pp. 1380 (Anno.), 1391. Headnote 6: 40 Cyc. p. 1335. Headnote 7: 38 Cyc. p. 1514. Headnote 8: 38 Cyc. p. 1737.

Headnote 4: 14 R. C. L. 812.

*Appeal from Guthrie District Court.*—W. G. VANDER PLOEG, Judge.

·FEBRUARY 15, 1927.

This is a contest over the probate of a will. The jury found for the proponent, and contestant appeals.—*Reversed.*

*David S. David* and *W. D. Milligan,* for appellant.

*Moore & Moore,* for appellee.

ALBERT, J.—This is the second appeal in this case, the first appeal being reported in 199 Iowa 946. The will in controversy was executed on the 10th day of September, 1921, by Joseph Zaruba, who was at that time 82 years of age. He was a Bohemian by nativity, and emigrated to America when a young man, where he married, and settled in Johnson County, Iowa, sometime prior to 1876, then removed to Guthrie County, Iowa, where he died on the 10th day of September, 1923. He never learned to read, write, or speak the English language very well. He was twice married. There were ten children born to the first marriage, and none to the second. Both wives predeceased him; and after the death of the second wife, he lived for some eight years with his son Rudolph, and later with his son Ludie, until the time of his death. The death of his son Rudolph was a great shock to him. About 20 years prior to his death, the deceased was injured in a cyclone, which destroyed his house. He was struck on the side of the head by some object, and one ear was torn nearly off. From that time, he was hard of hearing. Five sons and two daughters survived him, all of whom were married. There seems to have been no ill feeling in the family.

This is a sufficient statement of the facts, so far as the questions urged for reversal are concerned.

The contestants raised three questions: The due execution of the will, undue influence, and mental incapacity. The court withdrew from the consideration of the jury the question of the execution of the will and undue influence, and submitted the question of mental incapacity, and the jury returned a verdict in favor of the proponent.

We have reviewed the record, and find that there was no evidence whatever on the part of the contestant on the question of the execution of the will, and the court's ruling was right in

withdrawing this question from the consideration of the jury and holding in favor of proponent.

As to the question of undue influence, under the repeated holdings of this court there was not sufficient evidence to take this question to the jury; hence the ruling of the court on this proposition is correct. The fact situation in this case differs materially from *In re Estate of Workman,* 174 Iowa 222.

In the trial, contestant had a witness on the stand by the name of Dr. Bos, who testified as an expert. He had never seen the deceased during his lifetime. The contestant propounded to

1. APPEAL AND ER-
ROR: harmless
error: non-in-
jurious ruling.

him a hypothetical question, covering three pages in the abstract. This question was objected to; and, under the ruling of the court, reference in the hypothetical question to the disposition of the property made by him in the will was stricken out. With the question thus deleted, the witness was permitted to answer, and said:

"I would consider the man of unsound mind, from the evidence you state. My opinion is, he was suffering from senile dementia."

The contestant urged that the part stricken from this hypothetical question should have been permitted to remain in the question. With this we cannot agree. Of course, this witness was used for the purpose of testifying that, under the facts stated in the hypothetical question, the deceased was of unsound mind; and the fact that he so testified, even after the parts of the hypothetical question were stricken, gives the benefit of this testimony to the contestant, with the same force and effect as though the parts stricken had been included in the question. In other words, the fact that a witness gives the answer desired, on a hypothetical question including fewer facts than the interrogator wishes to include in the question, is a matter about which he cannot complain, so long as he gets the desired answer.

Contestant also used a witness by the name of Dr. W. A. Shidler. This doctor knew nothing about the deceased until May, 1923, when he was first called upon to attend Joseph Zar-

2. APPEAL AND ER-
ROR: harmless
error: striking
preliminary ques-
tion.

uba. This was about four months prior to his death. He described the condition of his patient at that time, and was asked whether he would be able to determine then whether he was of

sound or unsound mind. This question was objected to, and the objection sustained. It was evidently a preliminary question. The real question as to whether or not, in the opinion of the witness, Joseph Zaruba, at the time witness was attending him, was of sound or unsound mind, was not propounded to the witness. More than that, this question had to do with the condition of the deceased at a time long after the execution of the will, and the real question was what his mental condition was at the time of the execution of the will. We see no error in the ruling.

Two witnesses to the will, Hitchins and Heater, testified in this case. It appears that they also testified in the first trial of the case. Their testimony was taken early in the trial of the case, and, after cross-examination, they seem to have been excused, and later, at the close of contestant's case, there seems to have been an offer by contestant of a part of the cross-examination of Heater and Hitchins taken at a former trial. The court held that this was not admissible. This record does not show that the transcript was offered, nor does it show what was in the transcript from which the contestant was then attempting to question Heater and Hitchins, nor does it show what their testimony was in such transcript. We therefore have nothing before us on which we can base a conclusion or pass upon the question as to whether or not the court committed an error. The court's ruling must, therefore, stand as made.

3. APPEAL AND ERROR: reservation of grounds: insufficient record.

In one of the instructions given, the court, among other things, said:

"Whether the said Joseph Zaruba was able to speak or understand the English language or whether he was able to read and write the same is wholly immaterial."

It is urged that inclusion of this paragraph in the instruction is erroneous. If this part of the paragraph is taken by itself, the objection made is probably correct; but, following this part above quoted, and as a part of the same paragraph, the court further said:

4. TRIAL: instructions: construction as a whole.

"Except as the evidence bearing upon the question aids you in determining whether or not Joseph Zaruba, at the time he signed the instrument in question, was or was not possessed of testamentary capacity, so as to be able to make a valid will."

When the paragraph is read as a whole, the objection of ap-

pellant is not tenable.

The next complaint is that the court erred in overruling the motion for a new trial, and exceptions to instructions. This is not such an assignment of error as is required by our rules (see Rule 30), and does not entitle the contestant to consideration of the same.

5. APPEAL AND ER-
ROR: assign-
ment of error:
fatal general-
ity.

In Instruction No. 7, a statement is made that "mere mental weakness does not disqualify one from making a will. It is not necessary that a party making a will should be able to comprehend the provisions of his will in their legal form." (Objection is made to this statement.) The instruction continued:

6. WILLS: testa-
mentary capa-
city: instruc-
tions: "compre-
hending legal
form."

"  *  *  *  or that he have sufficient capacity to make contracts or do business generally. If the said Joseph Zaruba's mind was sufficiently sound to enable him to know and understand the extent of his property, his relation to the natural objects of his bounty, and the business in which he was engaged at the time of the execution of the writing in question, then he is of sound mind, within the meaning of the law."

This instruction was erroneous, in so far as it told the jury that "it is not necessary that a party making a will should be able to comprehend the provisions of his will in their legal form." It certainly is true that, if he does not comprehend the provisions of the will in the form in which it is prepared, it is not his will. On a resubmission of the case, this part of the instruction should not be given.

Instructions Nos. 8, 9, 10, and 11 are also objected to; but these instructions, when read as a whole, and in connection with the other instructions in the case, are a fair exposition of the law in such matters.

Instruction No. 12 being devoted to the question of evidence of medical witnesses, the court said, among other things:

"In order for this kind of evidence to be of any value, all the material facts embraced in the question must have been established by proof. If such question contains a material statement not proven, or omits a material fact established by the proof, then such evidence should not be considered by you in arriving at a verdict."

7. TRIAL: instruc-
tions: province
of court and
jury: materiali-
ty of testimony.

In the case of *Stanley v. Taylor*, 160 Iowa 427, we had under discussion this identical question, and we there said:

"This instruction is claimed to be erroneous; and, in harmony with our recent cases, we are bound to hold that it is, although, in our earlier case of *Bever v. Spangler*, 93 Iowa 611, an offered instruction, in language almost identical with this instruction, was approved. The particular fault in the question is that it allows the jury to determine the materiality of certain assumed facts incorporated in the hypothetical question; while the rule as to this, as well as to all other classes of testimony, is that its materiality must be determined by the court, its weight and credibility by the jury. In the light of our frequent recent holdings upon this question, it is unnecessary to enter upon a further discussion of the proposition. See *Kirsher v. Kirsher*, 120 Iowa 337; *Stutsman v. Sharpless*, 125 Iowa 337; *Ball v. Skinner*, 134 Iowa 298."

The instruction in the instant case is vulnerable to the same objection as the one in the *Stanley* case. In other words, it is not permissible for the court, in instructions, to leave the jury to determine which of the alleged facts set out in the hypothetical question are material and which are not.

In the latter part of the same instruction the court said:

"Where competent physicians or surgeons testify from personal observation or knowledge of all of the facts and conditions connected with the subject of the inquiry, such testimony is entitled to greater weight than the testimony of medical witnesses based alone upon a given state of facts or hypothetical questions."

8. TRIAL: province of court and jury: unallowable contrasting of testimony.

Against this part of the instruction objection is also lodged, and our attention is called to the case of *Philpott v. Jones*, 164 Iowa 730, at the top of page 744, where an instruction is set out, said to be contained in the case of *In re Will of Winslow*, 146 Iowa 67. This is an error in the *Philpott* case, as will be perceived by turning to the *Winslow* case in 146 Iowa, where no such instruction is set out or referred to in the opinion. This error arises from the fact that the *Winslow* case, when originally submitted, was followed by an opinion which is reported in 122 N. W. 971, where the quoted instruction will be found; but, after the original opinion had been filed in the *Winslow* case, a

rehearing was granted, and a later opinion was finally approved by the court; and this last opinion is the one reported in 146 Iowa, at page 67.

In substance, the complaint against this instruction is that the jury are told that they should give more weight to the testimony of the regular and attending physician of the deceased than to the testimony of experts who never saw the deceased, but testified wholly on a hypothetical question. That the court had no right to thus tell the jury, as a matter of law, that the attending physician's testimony was of more worth or value than that of the experts, see the case of *Bever v. Spangler*, supra, where, in discussing this question, it is said:

"It is peculiarly the province of the jury to determine the weight of the testimony, and it is always dangerous for a court to attempt to say that one class of testimony or one class of witnesses ought, under all circumstances, to be given more credit or weight than another."

In the *Spangler* case, an instruction embodying this thought was requested and refused, and the action of the court in refusing the instruction was affirmed by this court. To the same effect see *Hofacre v. City of Monticello*, 128 Iowa 239, at 250.

We are therefore forced to hold that this instruction was erroneous, both in submitting the materiality of the matters set out in the hypothetical question and in telling the jury that the attending physician's testimony was of more weight than that of the experts.

Some other questions are raised and discussed in the case, but they are not likely to arise on a retrial; hence we give them no attention.—*Reversed.*

EVANS, C. J., and DE GRAFF and MORLING, JJ., concur.