ANNIE ZARUBA BLAKELY, Appellant, v. JOHN CABELKA, Appellee.

October 23, 1928.

Rehearing Denied March 8, 1929.

*David S. David* and *W. D. Milligan,* for appellant.

*Moore & Moore* and *Howard & Sayers,* for appellee.

Kindig, J.—There have been two previous trials of this controversy in the district court, and the same number of appeals here. See *Blakely v. Cebelka,* 199 Iowa 946, and *Blakely v. Cabelka,* 203 Iowa 5.

Three different wills were executed by Joseph Zaruba. John Cabelka, the appellee, was named executor in all of them. This nominee for such trust was a life-long friend of the said Joseph Zaruba's. The first will was executed some years before September 6, 1921. On September 6th, aforesaid, Joseph Zaruba, accompanied by his son, Andy, and John Cabelka, went to the bank in Yale, for the purpose of having a new will prepared by the cashier, Guy E. Heater, who declined to do so, but suggested that Mr. Earl W. Vincent, an attorney at Guthrie Center, was competent to draw the new instrument. Joseph Zaruba consented; so he, his son, Andy, and Cabelka accordingly went to Guthrie Center the same afternoon, where the second will was drafted and typewritten by Mr. Vincent. After the testament was completed, it was noticed that there was an error in the description of some real estate, and correction was made by pen interlineation, and as thus changed, execution thereof was duly made by Zaruba. But Mr. Vincent suggested that he disliked the interlineation, and that he would have his stenographer retype the entire will, and send it over to Yale for execution. That was done, and Zaruba, on September 10th of the same year, then signed the third will, in the presence of the statutory witnesses. Such later writing in substance and phraseology was identical with the rejected, interlined copy.

At that time, Joseph Zaruba was 82 years old. He was born in Bohemia, and immigrated to America when a young man, where he married, and became a farmer in Johnson County, prior to 1876. Then, afterwards, he removed to Guthrie County, where he died, on September 10, 1923. Ten children were born as the fruit of this marriage. Following this, the first wife died, and Zaruba again married, but he and his second wife had no children.

In the first will, executed before 1921, Zaruba wholly ignored the contestant, his daughter, Annie Zaruba Blakely. However, he did provide therein that each of her children should receive a specific bequest of $200. Contestant left her father's home and married at a time when her mother was an invalid, as a result of a paralytic stroke. Mrs. Kunce, another daughter, had also married. Therefore, the father had no housekeeper to look after his small children, who were all boys. Consequently, he was much disappointed in Annie's marriage and departure from home,—so much so, in fact, that he declared he would disinherit her. Subsequent to Annie's marriage, Joseph Zaruba continued to keep house with the boys by "baching," and while thus doing, they carried on the farm operations. They were unable to hire satisfactory help, and finally Zaruba obtained the services of an elderly lady from Omaha, who afterwards became his second wife.

Before entering into the second marriage relationship, however, Joseph Zaruba went to Guthrie Center, obtained the services of an attorney, who prepared deeds conveying to his sons different tracts of land, but reserved a life estate for himself, and provided that, upon his death, the grantees should pay certain specified sums to the girls, Annie Zaruba Blakely and Emma Kunce. A son, Leopold, thus received one tract of this real estate. Afterwards, however, this boy became involved in bankruptcy, and the property was taken by the trustee therein, subject to the father's life estate. These complications worried Joseph Zaruba, and were one of the causes why he desired the change in his will.

Being a Bohemian, he was not proficient in the English language, but could carry on a conversation therein. When in Mr. Vincent's office, on September 6, 1921, and in the bank at Yale, on the 10th of the same month, the new will was read and

explained to him. For all practical purposes, the third will was the same as the first, with the exception of the gift to Leopold and bequests to the daughters. While reconsidering the first will in Mr. Vincent's office, preparatory to the dictation of the second, Zaruba suggested that he would eliminate the provisions for the contestant's children, as well as that made for the benefit of Emma Kunce, because he had arranged to give these daughters money, in lieu of those bequests. Accordingly, on September 10, 1921, when the third will was executed, Joseph Zaruba took his certificates of deposit, and so arranged them that they would be payable to the contestant and her sister, Emma Kunce, in the sum of $1,000 each. It appears that these certificates were afterwards delivered to and cashed by the donees.

Finally, the third will was offered for probate by John Cabelka, the executor therein named, and in due time, objection was interposed thereto by Annie Zaruba Blakely, the appellant. All the beneficiaries and devisees designated in the will were sons of the testator's. Two grounds were presented by appellant for the contest, which were that: First, the testator was a person of unsound mind; and second, that the will was obtained by undue influence. During the trial, however, the district court directed a verdict against the contestant on the ground of undue influence, and the only issue submitted to the jury was that relating to testator's mental capacity.

The jury found for John Cabelka, the proponent and the executor named in the will. Hence the appeal.

I. Consideration of the entire record has been made, and clearly there is no basis therein for submitting to the fact-finding  body the issue of undue influence. Evidence to sustain that proposition is lacking in the case at bar, as it was in the former hearing. (*Blakely v. Cabelka*, 203 Iowa 5.) We said in that opinion:

"As to the question of undue influence, under the repeated holdings of this court there was not sufficient evidence to take this question to the jury; hence the ruling of the court on this proposition is correct."

No material change in the record concerning that phase of the controversy is presented here. Wherefore, the decision in 203 Iowa 5 is the law of the case, and the district court acted

correctly in directing the jury to find for appellee to that extent.

II. Ample proof is found in the record sustaining the testator's mental capacity and the validity of the will, and it is very doubtful, indeed, whether or not contestant brought forth  sufficient evidence entitling her to have the jury pass upon the testator's mental unsoundness and the will's validity. If she did not do so, her many objections would become immaterial, because, in that event, the result of the trial would have been the same, had the alleged erroneous rulings and procedure been in accordance with appellant's contention. *Lahner v. Schaum,* 198 Iowa 1388; *Dye Produce Co. v. Davis,* 202 Iowa 1008; *Mulroney Mfg. Co. v. Weeks,* 185 Iowa 714; *Brown v. Hunt & Shuetz Co.,* 163 Iowa 637. *Lahner v. Schaum,* supra, aptly suggests:

"In other words, the court would, in any event, have been compelled to direct a verdict in behalf of appellees; and, had each of the rulings on the evidence been otherwise than they were, the result would have been the same."

Nevertheless, in view of our subsequent discussion herein, it is not necessary to extend this opinion unduly for the purpose of setting out all the evidence to support the disposal of the appeal on this theory.

III. Forty-one assignments of error are made. Few, if any, are supported by the citation of applicable authority. Some are in the blanket form. Concerning this, we said in *Ryan Bros. v. Rate,* 203 Iowa 1253:

"Our rules require that, when errors are assigned or points are to be made in this court, they must specifically point out  the matter complained of and the objections thereto. Omnibus errors will not be considered, but will be disregarded. * * * The thought is that, in assigning these points or errors, the assignment must not only state the points, but the reason or basis for the complaint."

All those assignments entitled to consideration, under our rules, have been carefully reviewed, and we find that in most instances the alleged error does not appear, when considered in the light of the amended abstract.

IV. Grievance is made by appellant because the district court excluded much of her evidence, under the provisions of Section 11257 of the 1924 Code, which is as follows:

"No party to any action or proceeding, nor any person interested in the event thereof, * * * shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the commencement of such examination deceased, * * * against the executor, administrator, heir at law, next of kin, assignee, legatee, devisee, or survivor of such deceased person * * *."

Claim is made by appellant that John Cabelka was simply a proponent, and not an executor, because not yet appointed as such, although named for that trust in the instrument.  Further, it is the theory of the appellant that the heirs at law of Joseph Zaruba and the beneficiaries under his will were not parties to this action to prevent the probating of a will by this kind of a contest, because they received only a published, as distinguished from a personal, notice thereof, and did not appear or intervene therein. She insists that the only parties were herself, as contestant, and John Cabelka, as proponent. He was neither a beneficiary nor a legatee under the will.

As to what extent the court had jurisdiction under the proceedings to entertain a will contest, we need not and do not here decide. Intervention was made by appellant, with the idea of interjecting into the ordinary probate proceedings the issues of her contest, but she gave no personal notice thereof. Nevertheless, this was primarily an action to probate the will, and the heirs and beneficiaries had due and sufficient notice by publication, under the statute for that purpose. Hence, we do not agree with appellant's interpretation of the legislative enactment above quoted.

Section 11863 of the same Code provides:

"After the will is produced, the clerk shall open and read the same, and a day shall be fixed by the court or clerk for proving it, and may be postponed from time to time in the discretion of the court."

Succeeding that provision is Section 11865, which reads:

"The clerk shall give notice of the time fixed, by publishing a notice, signed by himself and addressed to all whom it may concern * * *."

Also, a subsequent section, 11868, specifies:

"After being proved and allowed, the will, together with the certificate hereinbefore required [certificate of probate], shall be recorded in a book kept for that purpose, and the clerk shall cause the same, or an authenticated copy thereof, to be placed in the hands of the executor therein named or otherwise appointed."

Presentation of the testamentary document for probate is properly made by the executor therein named. *Meeker v. Meeker*, 74 Iowa 352. See, also, *In re Estate of Thomas Berry*, 154 Iowa 301.

Litigation of this controversy growing out of the will's sufficiency to be probated affects, to the extent of the court's jurisdiction in that regard, all heirs and beneficiaries who had the statutory notice provided in Section 11865 aforesaid. When once probated, the testamentary document is finally established until and unless set aside under the provisions of Section 11882, which is:

"Wills, foreign or domestic, shall not be carried into effect until admitted to probate, as hereinbefore provided, and such probate shall be conclusive as to the due execution thereof, until set aside by an original or appellate proceeding."

Limited jurisdiction may exist for initial judicial orders in the premises, even though personal notice was not given as is required: First, to set aside a will, under Section 11882, supra; or second, to contest the probate thereof before the same has been adjudicated the last will and testament of the decedent. See *In re Will of Tinsley*, 187 Iowa 23; *Kelly v. Kelly*, 158 Iowa 56; *In re Middleton*, 72 Iowa 424; *Gregg v. Myatt*, 78 Iowa 703. Probate was essential to the heirs and beneficiaries. Denial thereof was prejudicial to them. They were parties for the purpose of determining the will's adequacy or inadequacy for preliminary probate objects, even though such decision is not, for all purposes, conclusive, and is, in some instances, subject to future attack under Section 11882, supra.

Resultantly, if the proponent cannot urge for these heirs and beneficiaries the prohibitions contained in Section 11257, supra, contestant would be enabled, in spite of that legislation, to relate conversations, transactions, and communications with the decedent. Thereby the will would be denied admission to probate, and, to that extent, defeat of the heirs and beneficiaries accomplished.

"Proceeding," as used in Section 11257, supra, must be considered, not in its narrower sense, but rather, in the way in which it is utilized under the particular legislation in question. As thus regarded, "proceeding" is extensive enough in its scope to include the operation of that judicial machinery required to accomplish the probate of the will. So when contestant filed objections in this cause, her attack was (whether confined to preliminary probate inquiries or extended to the broad question of the will's validity) against the legatees and devisees named in the testament, who, by virtue of the probate-operating methods provided by the statutes aforesaid, were parties to the "proceeding." About this subject, we said in *In re Estate of Goldthorp*, 94 Iowa 336:

"Appellant claims that the statute has no application to the proposed evidence [which was offered in that case], because: *First,* Sarah and John [litigants in the cited case] are not legatees until this will is probated. *Second,* that, prior to the probating of the will, it is not certain that they ever will be legatees, and hence the testimony cannot be said to be offered against them as such. * * * When we consider the evil the legislature was attempting to remedy by the enactment of the law, it seems to us clear that the proposed construction is farfetched and unnatural. It may probably be assumed that the legislature, in enacting this statute, had in mind the rule of law as to when a will takes effect. We have held that, no matter when a will is dated or published, it takes effect, or speaks, as it is sometimes said, from the time of the testator's death * * *; and we have said that a legacy vested in the legatee at the time of the death of the testator * * * and that the title of a devisee vests at death of the testator * * *. The relation of legatee is created by the will, and, under these holdings, becomes effective to vest title on the testator's death. Contestant was a person

interested in the event of the litigation. * * * We have no doubt that, so far as this contention was concerned, he was an incompetent witness.''

Manifestly, the legatees and devisees in the will have a present, subsisting interest in the property here involved. Necessarily, then, the contestant's action must be against these devisees and legatees, within the purview of Section 11257, supra. Justice demands this conclusion. Otherwise, contestant would be permitted to do by indirection that which she could not do directly, and the statutory prohibition would amount to no more than an object of evasion. Therefore, the evidence was properly excluded. By this holding we do not decide, intend, or suggest that any heir or legatee, because of the part taken by him in proposing or denying the will, is not bound, for all purposes, in this litigation.

V. Objections are urged to the court's rejections and admissions of evidence. However, we have carefully considered each and every one of them, and are inclined to the view that there was no prejudice resulting to appellant, even if, technically, some of the rulings should not have been made.

VI. Appellant insists that she is entitled to a new trial because Ludia Zaruba (a devisee) went to the sheriff's office, after a witness, A. L. Smith, had testified, and there, in the presence of one or more jurors, said to him angrily that he had  ''sworn to a damn lie.'' Basis for this grievance is made by the affidavit of Smith, who says that the jurors were engaged ''in the first trial.'' The present trial is the third, and, of course, it would not be material in this controversy concerning what Ludia Zaruba may have said to former jurors not here engaged. Possibly the affidavit contained a typographical error, and ''first'' was intended to be ''third.'' Even so, there is no showing that the jurors heard Ludia Zaruba's statements complained of. None of them were called to prove or disprove the fact. We cannot, therefore, say that the district court exceeded the bounds of its discretion in refusing a retrial on this ground.

VII. Furthermore, appellant declares that she deserves a new trial because Ludia Zaruba and his wife, Elsa Zaruba, met the witness Annie Zaruba on the first floor of the courthouse

and there talked threateningly to her. This was after Annie Zaruba arrived in the building, but before she actually testified for contestant. These threats were to the effect, according to the affidavit of Annie Zaruba, that Ludia and Elsa Zaruba accused the former of swearing falsely in a previous trial. Concluding the conversation, it is alleged that Elsa and Ludia Zaruba said to Annie: "You want to be damn careful or we will have you up for perjury." Prejudice, it is claimed, resulted because, as Annie further says in her affidavit:

"I was nervous and could not then fairly and properly recall the facts I should have testified to on said trial, and that my testimony was not so strong, full, or complete as it would have been but for said threat and attack."

Affiant, however, fails to explain what she was thus caused to forget, nor does she say how her testimony was not so strong, or what was omitted therefrom. Without these essentials, we cannot say that a new trial should be granted.

VIII. It is further argued that appellant is entitled to a new trial for the reason that the court, at the beginning of the proceedings, made an order excluding all witnesses. However,

it is made to appear, by an affidavit filed by one of appellant's attorneys, that, nevertheless, the Zaruba brothers (legatees and beneficiaries) stood at the "opening of the center of the doorway, listening intently to the evidence offered for contestant." There is nothing to indicate, however, that in this position they were able to hear the proceedings, and the court is not shown to have exceeded its discretion in denying a new trial because of this.

IX. Error is assigned for the reason that, during a recess, John Cabelka (appellee), Andy Zaruba, Ludia Zaruba, Joseph Zaruba, and Charles Zaruba (legatees and beneficiaries),

were seen in the court room, talking to J. F. McDowdell, one of the jurors. Yet it does not appear what the conversation was, and the juror was not called to reveal it. Something more than this must be presented, to show error in the court's refusal to grant a new trial.

Wherefore, the judgment and decree of the district court should be, and hereby is, affirmed.—*Affirmed.*

STEVENS, C. J., and EVANS, FAVILLE, and WAGNER, JJ., concur.