IN RE ESTATE OF ELLEN B. HAYER.

J. C. DANIELSON, Executor, Appellant, v. VERA HAYER REDENBAUGH, Special Administratrix, Appellee.

No. 46267.

NOVEMBER 16, 1943.

Herrick, Sloan & Langdon, of Des Moines, and R. B. Hawkins, of Leon, for appellant.

O. M. Slaymaker, R. E. Killmar, and D. D. Slaymaker, all of Osceola, for appellee.

HALE, J.—The appellant, J. C. Danielson, is the executor of the estate of Ellen B. Hayer, deceased, who died in February 1940. Vera Hayer Redenbaugh, decedent's adopted daughter and appellee herein, was appointed special administratrix of the

estate. On March 5, 1940, Vera Hayer Redenbaugh filed objections to the probate of Ellen B. Hayer's will. There was verdict and judgment denying admission of the will to probate, and upon appeal to this court the case was reversed, the verdict and judgment set aside, and the case remanded to the trial court. See In re Estate of Hayer, 230 Iowa 880, 299 N. W. 431.

On June 2, 1942, the district court entered an order and judgment overruling the objections to the probate of the will and admitting the will to probate. Judgment was entered in favor of the estate in the sum of $1,403.15 for costs taxed in the supreme court and in the sum of $468.75 against the contestant in the district court.

On June 19, 1942, Vera Hayer Redenbaugh filed her final report as special administratrix. To this report J. C. Danielson, who had been appointed executor, filed objections and exceptions upon the grounds that the final report was not in proper form and failed to account for the judgment for costs above referred to; and further asserted that any compensation allowed Vera Hayer Redenbaugh as administratrix should be offset and applied on said judgment. At a hearing on said report the judge did not approve it, and on July 7, 1942, a supplemental report was filed. To this supplemental report the executor again filed objections and exceptions on the same grounds as to the original report. On July 10, 1942, the court overruled the objections to the report and held that the special administratrix was not required to account for the judgment which was rendered against her individually for costs. As compensation the court allowed the special administratrix $500 but directed that this should be held by the clerk and did not decide whether this amount of $500 should be applied on the judgment against Vera Hayer Redenbaugh. The special administratrix was discharged and her bond exonerated.

Appellant sets out two questions for decision: first, whether Vera Hayer Redenbaugh, as special administratrix, was required to account for the judgment against herself as an individual; and, second, whether the estate is entitled to offset or apply on said judgment the $500 fee allowed her as special administratrix. Appellant argues that there was no valid reason why the question of retention and application of the fee allowed upon the judgment

should not have been determined. The court did not pass upon the second proposition, but we will refer to that later.

Was the court correct in approving the final report of the special administratrix? No question seems to be made in this appeal to any items listed in the report or the supplemental report. The objection raised by appeal is the failure to list and account for the judgment for costs taxed against Vera Hayer Redenbaugh and in favor of the estate. The judgment of June 2, 1942, which was not appealed from, is against Vera Hayer Redenbaugh personally, and is for costs in the will contest and the appeal therefrom, and is not a judgment against her as special administratrix. The record does not show what these taxed costs consisted of or to whom they belong. They are not itemized in the transcript, abstract, or amendment thereto. If any items were properly chargeable against the special administratrix in favor of the estate, they should appear on her report and be accounted for.

I. We think it may be assumed as true, as claimed by appellant, that the liability of an administratrix is properly contested by objections to her final report. In re Estate of Christensen, 229 Iowa 1162, 296 N. W. 198, and cases cited; In re Estate of Windhorst, 227 Iowa 808, 288 N. W. 892.

II. In considering the duties and liabilities of a special administrator, the question arises, Do the rules which pertain to a general administrator apply with like force to a special administrator? Section 11885, Code of 1939, provides for the appointment of special administrators when for any cause general administration or probate of a will cannot be immediately granted. Section 11886 provides:

"They shall make and file an inventory of the property of the deceased in the same manner as is required of general executors or administrators, and shall preserve such property from injury, and for that purpose may do all needful acts under the direction of the court, but shall take no steps in relation to the allowance of claims against the estate. Upon the granting of full administration, the powers of the special administrators shall cease, and all the business be transferred to the general executor or administrator."

A special administrator is a temporary officer of the court, generally a disinterested person, and frequently appointed to take charge of an estate in case of the contest of a will. He is required to give bond, to take oath for the faithful discharge of his duties, to file an inventory, and to do all things needful in the preservation of the estate, and to turn over all assets thereof to the general administrator or executor when the latter is duly appointed and qualified. A special administrator must account for all property of the estate and should so account whether it comes into his hands at the time of appointment or thereafter. Except as to the allowance of claims, his duties and responsibilities are substantially the same as those of a general administrator, and so far as his powers and duties extend, ordinarily the same rules apply to the special administrator as to the general. One difference lies in the fact that at the termination of the incumbency of the special administrator, the estate is not closed but continues in the hands of the general administrator or executor.

III. It is the duty of an administrator to collect the debts due the estate. This includes not only the debts due from others but his own debts to the estate. An executor or administrator is considered as having paid the debts due from him and as having in his possession that much more cash, and he is held liable to the estate to the extent of his ability to pay. If he establishes that during the period of his appointment he was insolvent, and thus unable to make payment, he is not charged with the debt in his official capacity. Nor in such case should his bondsman be held liable, unless through neglect or design he has caused or permitted his own debt to become of less value or uncollectible. The burden is upon the administrator to make the showing of inability to pay. See 21 Am. Jur. 478–480, sections 193, 194; McEwen v. Fletcher, 164 Iowa 517, 146 N. W. 1, Ann. Cas. 1916D, 631; In re Estate of Parker, 189 Iowa 1131, 179 N. W. 525; In re Estate of Kendrick, 214 Iowa 873, 243 N. W. 168; 33 C. J. S. 1156, section 182. The cases above cited related to a general administration of estates, but, we think, apply to the duty of the special administrator to account for his indebtedness.

IV. It may be argued that the debt of Vera Hayer Redenbaugh arose after the death of decedent and was there-

fore not the property of deceased or of her estate. To constitute liability it must have been an asset and the property of the estate. There is no question but that a debt due from an administrator is an asset of such estate. Any property which during the continuance of an estate accrues to the benefit of those entitled to the proceeds of such estate is an asset thereof. Stolenburg v. Diercks, 117 Iowa 25, 90 N. W. 525; 33 C. J. S. 1056, section 101. It is true that the debt herein was not due decedent in her lifetime and did arise after decedent's death, but as special administratrix Vera Hayer Redenbaugh was the trustee with the duty to collect any debt which might belong to the estate. If it is the property of the estate, she must account therefor as such trustee or special administratrix. The word "estate" has a great variety of meanings. An estate includes all forms of personal property. Miller v. Miller, 200 Iowa 1070, 205 N. W. 870, 43 A. L. R. 567. An estate, in the sense here used, is deemed to exist from the death of a person until finally closed. The estate continues to exist until the property has been distributed or disposed of in accordance with the orders of court and the estate has been declared closed. State ex rel. Petters & Co. v. District Court, 76 Mont. 143, 245 P. 529.

It is the duty of the administrator to collect interest, rentals, and, in many cases, legacies and distributive shares of property coming to the deceased after his death. As to rentals, see Ihle v. Ihle, 222 Iowa 1086, 270 N. W. 452; and In re Estate of Holderbaum, 82 Iowa 69, 47 N. W. 898. In some instances, such property or assets might never have been the property of the deceased in his lifetime, did not arise out of any contract, nor was the income of any property belonging to the deceased during his lifetime—for example, a legacy. Yet we could not hold that such after-acquired property was not a part of decedent's estate or should not be handled or disposed of by the administrator. Any argument which would deny a right or claim of the special administrator to such after-acquired property would apply with equal force to the executor or administrator. If not a part of the estate in the hands of the special administratrix, then it is not such in the hands of the general administrator. In 33 C. J. S. 1083, section 126, it is said:

"Property, including causes of action,. accruing to a decedent after his death is part of his estate.

"Where an executor or administrator re ceives, by virtue of his representative capacity, property to whi h decedent became entitled after his death, he holds such prop e rty as assets of the estate, and is liable therefor in his repre s ntative capacity." (Citing Quincy v. Quincy, 167 Mass. 536,    46 N. E. 108, and Schonberg's Succession, 28 La. Ann. 137.)

The Quincy case referred to property  not inventoried but which afterward became valuable.    The Schoi nberg case held that the ferry tolls which accrued after the death. of the owner of the ferry became property of his estate.    That    an administrator is liable for after-acquired property is foun l    in the opinion of Taney, C. J., in De Valengin's Admrs. v. Du ffy, 14 Pet. (U. S.) 282, 290, 10 L. Ed. 457, 461:

"There are, doubtless, decisions which ( ountenance the doctrine, that no action will lie against an execu t or or administrator, in his representative character, except upo ni some claim or deman d which existed against the testator or  intestate in his lifetime; and that if the claim or demand wh olly accrued in the time off the executor or administrator, he is    liable therefor only in his personal character.    But upon a full  consideration of the natui e, and of the various decisions on the subject, we are of opiniom, that whatever property or money is lawfully recovered or received by the executor or administratoi e, after the death of his testator or intestate, in virtue of his repr e sentative character, he holds as assets of the estate; and he is lia b le therefor, in such representative character, to the party wh( has a good title thereto.    In our judgment, this, upon princi plle, must be the true doctrine."

The De Valengin case is reviewed in Vi ii Slooten v. Dodge, 145 N. Y. 327, 39 N. E. 950, which points out, that the liability of an executor in that case had arisen becausie of transactions to which deceased had been a party and becau se his debt had been chargeable to the liability which he had be en under, or would have been under, if he had lived.    Howeven the debt may have accrued in that case, we believe the corre ct rule as to after-acquired property is stated in the De Valei igin case.

If the contestant of the will had been some other person than Vera Hayer Redenbaugh it would have been the duty of appellee, the special administratrix, to collect the costs taxed, so far as such costs belonged to the estate she represented and were collectible, and report the same to the court as an asset coming into her hands for delivery to the executor. See In re Howell's Estate, 66 Neb. 575, 92 N. W. 760, 61 L. R. A. 313, cited in 21 Am. Jur. 480, section 495. Does not the same duty extend to her as to her own debt? To justify her failure to collect there must be a proper showing of insolvency. By reason of her official position she should secure no advantage, nor should the estate suffer because of the position she occupies. As an individual she brought action against the persons interested in the estate, was unsuccessful, and in some amount is liable to the estate. The claim, or a part of it, against her, though arising after the death of the testator, is an asset of the estate in her hands and should be reported; and it is incumbent upon her to explain why it is not collected. It is for the district court to determine the amount of her liability and to decide whether or not there exists proper and sufficient reason for the failure to collect. Our holding must be that subsequently acquired property, from whatever source derived, is an asset of the estate.

V. Appellee argues that the judgment for costs does not belong to the executor as it is not shown by the record that any part of the judgment is the property of the estate. Reference is made throughout the argument to various costs incurred but these are not itemized. That part of the costs was the property of the estate is reasonably certain. As shown by the record in the case of In re Estate of Hayer, supra, 230 Iowa 880, 299 N. W. 431, J. C. Danielson was not a devisee or legatee, but was the proponent who offered the will for probate and was joined in his defense in the contest suit by all the devisees and legatees under the will except Vera Hayer Redenbaugh. It was the duty of Danielson, named as executor in the will, to offer the will for probate and to make all reasonable effort to sustain its validity when contested. McElfresh v. McElfresh, 186 Iowa 994, 173 N. W. 259; Meeker v. Meeker, 74 Iowa 352, 37 N. W. 773, 7 Am. St. Rep. 489; Blakely v. Cabelka, 207 Iowa 959, 221 N. W. 451. Except in case of bad faith, the costs thereof would not be taxable against the proponent in the event of failure but would be

charged to the estate. In re Estate of Berry, 154 Iowa 301, 134 N. W. 867. In the absence of any listing of such indebtedness by the special administratrix in her final report it cannot be determined whether or not she has accounted for all indebtedness due to the estate, as was her duty. There was, at least, her indebtedness to the estate for the amount of the costs which belonged to it, and as to this there was no showing in the reports.

■ The property interest which the estate had in this debt was that part of the costs which the estate owned, or for which it had incurred liability, or had paid. It is true that there was no indebtedness of Vera Hayer Redenbaugh listed in the inventory, because there was none at the time it was filed; and we do not determine at this time what interest, if any, the estate had in the collection of any other costs. The judgment rendered on June 2, 1942, against Mrs. Redenbaugh was in favor of the estate. But that does not mean that this judgment for costs was the property of the estate; its property interest was in that part of the judgment belonging to it. It is true that as against Vera Hayer Redenbaugh these costs could be collected by execution or fee bill, but the disbursement of such costs, if collected from her, would necessarily have to be made by the clerk and by him not all paid over to the estate but distributed to the parties entitled to such costs, including witnesses, officers of court, and to the estate in such sum to which it would be entitled. Thus, if collected by execution, as in other cases, the disposition of the fund so collected is different from the disposition of funds on an ordinary judgment for damages or on contract. The judgment is a taxation of costs rather than a judgment for funds to which a plaintiff may be entitled in his own right. The statute, section 11622, Code of 1939, states that costs shall be recovered by the successful against the losing party. But these costs belong to the persons for whom they are taxed; and in this state there is no ownership by the successful party except of the costs to which such party is entitled. They are not his absolutely. This seems to be the rule in Iowa, although not in all the states. 15 C. J. 175, section 423; 20 C. J. S. 269, 270, section 9, and cases cited.

In Hidy Bros. v. Hanson, 116 Iowa 8, 10, 89 N. W. 36, the judgment was for costs of which plaintiff had only advanced $20. The court said:

1352

"This is the extent of his interest therein. The fees of others entitled thereto did not belong to him, nor had he any authority to collect the same. In construing sections of the statute similar to 1299 [now section 11754] and 3855 [now 11626] of the Code, this court said in McConkey v. Chapman, 58 Iowa 281: 'In our opinion, the plain meaning of the two sections, taken together, is that the party against whom the judgment is rendered is primarily liable for all costs to the parties entitled thereto; that they may issue their fee bill therefor, and, failing in that, they may, by motion, require the successful party to pay such of the costs as accrued at his instance.'" And, quoting further from the decision in the McConkey case: "'The taxation of costs shows the witnesses and officers entitled thereto, and respective amounts due each of them. * * * While it may be said the successful party has judgment for costs, he has no right to collect such as he has not advanced or paid. The judgment for costs which are due jurors, witnesses, and officers of court, while it may be said to be included within the judgment in favor of the successful party, yet it is for the use of the parties entitled to the costs. The successful party has no interest in that part of the judgment.' If, then, Hanson had no interest in the costs taxed against Hidy, save as advanced by him, and was unauthorized to collect any other costs, he is not in a situation to demand that Hidy's property be subjected to the payment of any part of the judgment save the costs by him paid."

It is said in Frankel v. Chicago, B. & P. Ry. Co., 70 Iowa 424, 30 N. W. 679, that a decree enforcing a judgment for costs, where plaintiff has not paid all of the costs, should provide for payment to the clerk, to be by him distributed to the persons entitled thereto. See, also, Charles City v. Surety Tr. & Sav. Bk., 143 Iowa 324, 120 N. W. 114, as to the right of collection.

Apparently, therefore, although the judgment of June 2, 1942, is a judgment against appellee, the collection of which may be enforced if assets are found, it is in favor of the appellant only to the extent to which he has a claim thereon for costs due such appellant. It is therefore necessary, before the liability of Vera Hayer Reden'baugh to the estate can be determined, that it be first ascertained what part of the costs belong to J. C. Danielson, executor, as property of the estate.

VI. While the court did not directly decide the question of retainer, it impounded the fees of $500 which were allowed to the special administratrix and directed that they should be held by the clerk. Appellee argues that this is not a question which is before this court, as the judge did not pass upon the question of retainer. While it is true that the question of retainer was not directly passed on, we take it that the retaining of the fee, which could have been for no other purpose than to apply on whatever might hereafter be found due from the special administratrix to the estate, constituted a ruling, which, in connection with the rest of the matters present, should be determined by us. It seems that there can be little argument about such a right. We have held that such right exists in the case of a distributive share, both as to real estate and to personal property. See Yungclas v. Yungclas, 213 Iowa 413, 239 N. W. 22, and cases cited; and, as against an insolvent legatee, In re Estate of Flannery, 221 Iowa 265, 264 N. W. 68. And such right has been upheld as against the fees of an administrator. See In re Estate of Jackson, 200 Wash. 116, 93 P. 2d 349, 123 A. L. R. 1281; Stanley v. United States Nat. Bk., 110 Or. 648, 224 P. 835; Gosnell v. Flack, 76 Md. 423, 25 A. 411, 18 L. R. A. 158; Linthicum v. Polk, 93 Md. 84, 48 A. 842.

The right of retainer exists as to any claim which the estate may have by reason of costs for which such estate is liable, or has paid, and which are included in the judgment against Vera Hayer Redenbaugh. Such costs may be offset or collected from the fees in the hands of the clerk or from any other fund or interest which the said Vera Hayer Redenbaugh may have in the estate of Ellen B. Hayer.

Our conclusion therefore is, and we hold, that the order of the district court approving the report must be reversed; that the cause should be remanded for the purpose of determining what part of said judgment for costs constitutes property of the estate of Ellen B. Hayer, and that the special administratrix may be required to report and account for such indebtedness to the estate, or make proper showing of the reasons for her failure to satisfy such indebtedness, in accordance with the ruling of this court; and that an order be entered directing the application of the fund now held by the clerk, or so much thereof as may be

found necessary to pay the indebtedness due the estate of Ellen B. Hayer, upon such indebtedness.

The order of the trial court is reversed and the cause remanded for further proceedings in accordance with this ruling.— Reversed and remanded with directions.

GARFIELD, SMITH, OLIVER, BLISS, WENNERSTRUM, and MANTZ, JJ., concur.

MULRONEY, C. J. (dissenting)—I do not agree with the majority opinion and I respectfully dissent. While I am not adverse to the order remanding the case for a determination as to the amount of the cost judgment that is for the benefit of the estate, I do not see much necessity therefor. I would hold that this cost judgment against the retiring special administratrix passed to the general administrator, whether mentioned in the former's final report or not.

The majority opinion states the rule that a general administrator will be required to account for his indebtedness to the deceased or to the estate unless he is able to show his insolvency or inability to pay throughout the period of administration. With this rule I have no quarrel. But the majority opinion extends this rule to the special administratrix. With that conclusion I do not agree. No case is cited in the majority opinion which so holds. In Division IV of the majority opinion it is stated that if the will contestant had been some person other than the special administratrix, the latter would have had the duty to collect the costs taxed against that other person. If by that statement is meant her mere failure so to do would constitute an accounting failure, I do not agree. The cited case of In re Howell's Estate, 66 Neb. 575, 92 N. W. 760, 61 L. R. A. 313, is not authority for the statement. There no special administrator was involved. The case merely held that a resigning general administrator, who was concededly insolvent throughout the administration period he served, need not account for the money he owed deceased on a note. He need only turn over his note, and his administrator's fee for a credit thereon, to his successor, and his final report would be approved.

A special administrator is appointed, under section 11885,

Code of 1939, providing for such appointment "* * * to collect and preserve the property of the deceased * * *." I do not feel that an appointment under this statute casts upon the special administrator the general duty to collect either the debts owed to the deceased or the estate. It is true that to carry out the duty of preservation of assets which is placed upon the special administrator, he would have the duty to collect obligations when there is danger that the obligations would be rendered uncollectible by delay. I would interpret the phrase "to collect" in the statute to mean "to gather in," "to assemble." I do not think it places on the special administrator the general duty to collect all the notes due the deceased, nor all the debts due the estate. I think his final report, at the time he turns over the assets of the estate to the general administrator, should be approved if he turns over the obligations or choses in action, if it is not shown that they have decreased in value by any failure to institute collection proceedings.

I think this interpretation is somewhat fortified by the use of the words "property of the deceased" in the statute. To collect the property of a person hardly means more than gather it in or assemble it. It would seem that if the legislature had meant the duty to collect the debts or obligations due the deceased, it would have said so. The same rule should apply to debts due the estate that were not due the deceased. If they are owed by the special administrator or administratrix individually, and do not arise out of any breach of duty owed to the estate, but exist against such representative solely in his or her individual capacity, then there is no duty to account for the money due on such debts. An added argument might be made in favor of a rule that the special administrator has not the general duty to collect debts due the estate. The statute only states his duty "to collect * * * the property of the deceased." In this case the debt was never the property of the deceased.

The record shows administratrix was both a claimant and a legatee in this estate. The judgment goes to the general administrator anyway. He can collect it. I agree that her fee as special administratrix should be retained to apply on the cost judgment against her. The court merely sequestered it until the

1356

claim she is asserting against the estate (in more than the amount of the judgment) is determined. I would affirm the action of the trial court in approving the final report and sequestering the fee.

MILLER, J., joins in this dissent.