# STATE OF MARYLAND *v.* ENSOR AND COMPTON

[No. 102, September Term, 1975.]

*Decided April 19, 1976.*

530

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and ▌O'DONNELL, JJ., and MATTHEW S. EVANS, Associate Judge of the Fifth Judicial Circuit, specially assigned.

*Clarence W. Sharp, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellant.

*Paul F. Strain* with whom were *Joseph H.H. Kaplan* on the brief for Ralph E. Ensor; *Arnold M. Weiner* and *Francis S.*

*Brocato* on the brief for Charles Edward Phelps Compton, appellees.

SMITH, J., delivered the opinion of the Court.

We granted certiorari in this case "limited solely to the question whether the Assistant Attorney General appearing before the Grand Jury of Baltimore City which returned the indictments in this case was lawfully qualified as a Special Assistant State's Attorney of Baltimore City and therefore authorized to appear before the Grand Jury . . . ." We conclude that he was, thus mandating a reversal of the decision of the Court of Special Appeals in *State v. Ensor and Compton*, 27 Md. App. 670, 342 A. 2d 1 (1975), which affirmed the determination of a trial judge (Grady, J.) in the Criminal Court of Baltimore that he was not lawfully qualified to appear. As a result of that determination their motion to dismiss the indictments was granted.

Appellees, Ralph E. Ensor (Ensor) and Charles Edward Phelps Compton (Compton), were indicted by the Grand Jury of Baltimore City on March 29, 1974. A total of 13 indictments were handed down. One indictment charged both men with conspiracy to violate the false pretense laws. Six indictments were returned against each of them charging acts of forgery and attempts to obtain money under false pretenses. All of the charges arose out of alleged alterations made in change orders in connection with State construction contracts.

The facts are succinctly stated in the opinion of Judge Grady:

> "The following facts relevant to the Motion are not in dispute. The indictments against the defendants were returned by the Grand Jury for Baltimore City on March 29, 1974. Evidence leading to these indictments was presented to the Grand Jury at various times starting on February 1, 1974. Mr. [Arrie W.] Davis appeared before the Grand Jury during the presentation of this evidence on February 1, 1974, and on several other occasions

before March 29, 1974. Before, during and after the period of February 1, 1974, to March 29, 1974, Mr. Davis was an Assistant Attorney General of Maryland. The Attorney General of Maryland was not directed by the Governor of Maryland to assist the State's Attorney for Baltimore City in prosecuting any of the matters which are the subject of the indictments in question. On February 1, 1974, before a Judge of the Criminal Court of Baltimore and before his first Grand Jury appearance Mr. Davis was administered the oath of office given an Assistant State's Attorney in Baltimore City and was sworn in as a Special Assistant State's Attorney. There is no claim that Mr. Davis was present during any deliberations or voting by the Grand Jury. There is no claim that Mr. Davis' presence before the Grand Jury resulted in any actual prejudice to the defendants."

The record as to Davis' appointment is not as precise as one might prefer. No written order appointing him appears in the record. Apparently, it is not the custom of the Criminal Court of Baltimore to keep minutes of all its proceedings as is done in some of the trial courts of the State. A Deputy State's Attorney for Baltimore City testified that on the morning of February 1, 1974, when he entered his office he was presented by the State's Attorney with a letter to the Chief Judge of the Supreme Bench of Baltimore City. He was instructed to see that Davis was "sworn in as a special prosecutor" on that day. The deputy concluded that the request should not go to the Chief Judge of the Supreme Bench. Instead, he said he appeared in Part I of the Criminal Court of Baltimore and requested the judge then presiding "in accordance with [Maryland Code (1957, 1973 Repl. Vol.)] Article 26, Section 11, that Mr. Arrie Davis be appointed as an Assistant State's Attorney to assist in the prosecution of a criminal case." He stated that he specifically remembered asking the court reporter to make a record of the proceedings since there was no letter being presented to the court, only a verbal request of the State's

attorney. The judge then presiding, according to the testimony, "instructed the [deputy] Clerk of the [Criminal] Court [of Baltimore] . . . to administer the oath of office to Mr. Davis in accordance with the request of the State's Attorney. . . . [T]hat was done. [The deputy State's attorney] was a witness to it." [1] No one seems to have been able to produce the transcript of the proceedings relative to this appointment and the administration of the oath. The facts as related by the deputy State's attorney are not disputed, however.

Relying upon *Coblentz v. State*, 164 Md. 558, 166 A. 45 (1933), and citing Maryland Constitution Art. IV, §§ 3 and 9, counsel for Ensor and Compton moved to dismiss the indictment. We shall discuss *Coblentz* in more detail later. There our predecessors, in an opinion by Chief Judge Bond, held that an indictment was invalidated by the presence of an unauthorized person in the grand jury room during the inquiry leading up to the indictment, regardless of whether this presence was shown to have injured the defendant.

Constitution Art. V, § 3 provides in pertinent part relative to the duties of the Attorney General:

> "[W]hen required by the Governor or General Assembly, he shall aid any State's Attorney in prosecuting any suit or action brought by the State in any Court of this State, and he shall commence and prosecute or defend any suit or action in any of said Courts, on the part of the State, which the General Assembly, or the Governor, acting according to law, shall direct to be commenced, prosecuted or defended . . . ."

It is conceded that neither the Governor nor the General Assembly "required" or "directed" the Attorney General to intervene in this matter.[2]

---

1. The Grand Jury of Baltimore City normally reports to and is subject to the supervision of the judge of the Supreme Bench of Baltimore City assigned to Part I of the Criminal Court of Baltimore.

2. There is no contention that either the Governor or the General Assembly subsequently authorized the prosecution as was done in Reddick v. State, 213 Md. 18, 27-28, 130 A. 2d 762, *cert. denied*, 355 U. S. 832 (1957),

In reaching his conclusion the trial judge relied upon *Johnson v. Duke,* 180 Md. 434, 24 A. 2d 304 (1942). As Judge Grady put it:

"The Court there referred to two constitutional provisions. Article II, Sections 11-13, set forth certain procedures to be followed 'in the case of any vacancy ... in any office which the Governor has power to fill ....' Article IV, Sections 42-43, set forth the procedure by which the Governor was to fill a vacancy in the office of justice of the peace. The issue before the Court concerned the validity of the Governor's action in appointing two justices of the peace to fill vacancies. At page 440 the Court said:

'It is an elementary rule of interpretation that effect should be given, if possible, to every section and clause of a written Constitution; and where there is a special provision in conflict with a general provision, the special provision should be given effect to the extent of its scope, leaving the general provision to control in cases where the special provision does not apply. *Manly v. State,* 7 Md. 135, 147; *People v. Field,* 66 Colo. 367, 181 P. 526; 11 *Am. Jur., Constitutional Law,* Sec. 55; 16 *C.J.S., Constitutional Law,* Sec. 25.'

The Court concluded that the special provision governing appointment to a vacancy in the office of justices of the peace took precedence over the general provision governing appointment to a vacancy 'in any office which the Governor has power to fill.' "

He said that "[t]he situation here presented ... raise[d] the question of whether the presence of a single person before the Grand Jury can be both authorized and unauthorized at

where the Court held "the Governor's subsequent written directive to prosecute the suits was a sufficient confirmation and ratification of the Attorney General's action in instituting the suits ...."

one and the same time." He "conclude[d] that Mr. Davis' acquisition of general prosecutorial authority as an Assistant State's Attorney did not validate his presence before the Grand Jury which was considering the indictments against these defendants," and thus "under the inflexible rule adopted in *Coblentz* the Defendants' Motion to Dismiss the Indictments must be granted." He went on, however, to examine Constitution Art. V, § 9 which we shall discuss in greater detail, said that "[i]n [his] opinion [that section] requires the State's Attorney to obtain the authorization of the Supreme Bench for the number of assistants deemed by the State's Attorney to be necessary in the discharge of the duties of his office, but does not require the Bench to approve the individuals whom the State's Attorney selects to fill the authorized positions," found "no compelling reason for the Supreme Bench to approve individually the person whom the State's Attorney selects to fill an authorized position," said that "there [was] no showing that the position to which Mr. Davis was appointed was not an authorized position," and that "[i]n the absence of such a showing the validity of Mr. Davis' appointment remain[ed] uncompromised and the Defendants' contention that Mr. Davis was not authorized to appear before the Grand Jury ha[d] not been proven." Therefore, he "f[ound] the other grounds upon which the Motion to Dismiss [was] based to be without merit."

The Court of Special Appeals based its decision upon Constitution Art. V, § 9 which states in pertinent part:

> "The State's Attorney shall perform such duties and receive such salary as shall be prescribed by law; ... provided, that the State's Attorney for Baltimore City shall have the power to appoint a Deputy and such other Assistants as the Supreme Bench of Baltimore City may authorize or approve and until otherwise provided by the General Assembly, the said State's Attorney, Deputy and Assistants shall receive the following annual salaries: State's Attorney, seven thousand five hundred dollars; Deputy State's Attorney, five

thousand dollars; Assistant State's Attorneys, four thousand dollars each; said salaries, or such salaries as the General Assembly may subsequently provide, and such expenses for conducting the office of the State's Attorney as the Supreme Bench of Baltimore City may authorize or approve shall be paid by the Mayor and City Council of Baltimore to the extent that the total of them exceeds the fees of his office, or as the General Assembly shall otherwise provide, and the Mayor and City Council of Baltimore shall not be liable for appearance fees to the State's Attorney." [3]

The Court of Special Appeals said in its opinion:

"In our opinion, the facts do not show that Mr. Davis qualified as an Assistant State's Attorney.

---

**3.** As adopted in the Constitution of 1867 this provision read in pertinent part:

"Sec. 9. The State's Attorney shall perform such duties and receive such fees and commissions as are now, or may hereafter be prescribed by law ... *provided*, that the State's Attorney for Baltimore City shall have power to appoint one Deputy, at a salary of not more than fifteen hundred dollars per annum, to be paid by the State's Attorney out of the fees of his office, as has heretofore been practiced."

By Chapter 185 of the Acts of 1900, ratified by the people November 5, 1901, this section was changed to provide that the State's attorney should "receive such fees and commissions or salary not exceeding three thousand dollars, as [was then] or m[ight] [t]hereafter be prescribed by law ...." At the same time it was provided that the State's Attorney for Baltimore City should "receive an annual salary of forty-five hundred dollars," should "have power to appoint one deputy, at an annual salary not exceeding three thousand dollars, and such other assistants at such annual salaries not exceeding fifteen hundred dollars each, as the Supreme Bench of Baltimore City m[ight] authorize and approve; all of said salaries to be paid out of the fees of the said State's Attorney's office, as ha[d] [t]heretofore been practiced." Subsequent revisions were made in 1912, 1924, and 1943. Under the provisions of Constitution Art. XV, § 1, as it existed from 1867 until the ratification by the people in 1956 of Chapter 99 of the Acts of 1956, "no person holding any office created by, or existing under th[e] Constitution or Laws of the State, or holding any appointment under any Court in this State, [was permitted to] receive more than three thousand dollars a year as a compensation for the discharge of his official duties, except in cases specially provided in th[e] Constitution." Relative to the office of State's attorney as a fee office *see* Baltimore v. O'Conor, 147 Md. 639, 128 A. 759 (1925); Tull v. Sterling, 133 Md. 164, 104 A. 191 (1918); and Goldsborough v. Lloyd, 86 Md. 374, 38 A. 773 (1897).

The facts show only that earlier in the first day of his participation in the proceedings of the grand jury, Mr. Davis appeared before a single judge of the Supreme Bench and took an oath of office as an Assistant State's Attorney. The oath was a nullity, unless his appointment had first been approved as required by the Constitution, Art. V, § 9. There is nothing in the record to show that his appointment was approved by the Supreme Bench of Baltimore City, either as a specific individual, or as an authorized position on the staff of the State's Attorney. Action by the Supreme Bench was required — action by a single member did not suffice.

"Under the Constitution Mr. Davis could have been authorized to participate in the proceedings of the grand jury of Baltimore City, either as an Assistant Attorney General or as an Assistant State's Attorney. Qualification as either would have been enough. Authorization in one capacity would not be nullified by lack of authorization in the other. But on the facts in this case he had no authority in any capacity. His participation invalidated the indictments." *Id.* 679-80 of 27 Md. App.

The language in Constitution Art. V, § 3 relative to the duty of the Attorney General to aid State's attorneys in prosecutions "when required by the Governor or General Assembly" is as that provision was reported to the floor of the Constitutional Convention of 1867 by the Committee on the Attorney General. *See Proceedings Maryland State Convention of 1867,* 117 and P. Perlman, *Debates of Maryland Constitutional Convention of 1867* (1923) 145-46. The debates on Article V are recorded by Perlman at pages 204-12. If any of them touched on an interpretation of this language it is not recorded by Perlman. This particular provision of the Constitution was virtually the same, if not the same, as that found in the Constitution of 1864. It came to the Convention floor in that form in the report of the

Committee on State's Attorney. *See Proceedings Maryland Constitutional Convention of 1864,* 501 and *Debates Maryland Constitutional Convention of 1864,* 1330. The latter record reflects at 1464 an effort to strike out of the proposed article that portion which required the Attorney General to give opinions to the State's attorneys. No recorded debate reflects upon an interpretation of this provision, however. Likewise, no interpretation of this particular provision is found in the discussion of this section by A. Niles, *Maryland Constitutional Law* (1915) 290-92.

We agree with the conclusion of the Court of Special Appeals that had Davis been qualified to appear before the grand jury in one capacity that qualification would not be nullified by lack of authorization in the other. We see the provision of Constitution Art. V, § 3 as susceptible of an inference that the framers of the Constitution intended to do two things: to assure that a possibly recalcitrant Attorney General would aid and assist a State's attorney who sought assistance, and to bar the Attorney General from going off on an investigation of his own in any particular county, in possible conflict with the elected State's attorney of the county, unless this action was first authorized by the Governor as the head of the exutive branch or the General Assembly as the legislative branch of the State. Although to avoid the very question we now have before us the Attorney General and the State's attorney would have been much wiser to have sought prior authorization for participation in this matter, we do not regard that failure as barring the appearance of Davis before the grand jury under the facts and circumstances of this case.

Constitution Art. V, § 9 is not applicable to this case for the simple reason that the appointment here was not made by the State's attorney, but by the judge presiding in the Criminal Court of Baltimore, Part I, pursuant to a request that he appoint counsel under Art. 26, § 11.[4]

---

4. For purposes of this opinion it is not necessary for us to consider the meaning of the provision of Art. V, § 9 relative to authorization and approval of assistant State's attorneys of Baltimore City by the Supreme Bench of Baltimore City.

Art. 26, § 11 was repealed by Chapter 2 of the Acts of the first special session of 1973 effective January 1, 1974. Accordingly, it was not in effect at the time of the appointment of Davis, having been supplanted by another section which we shall discuss. Immediately prior to its repeal it read:

> "The circuit courts for the several counties and the Criminal Court of Baltimore may appoint assistant counsel for the State, to aid in the trial of criminal or other State cases in said courts, whenever in the judgment of the court in which any such case is pending public interest requires it."

It had but one amendment between 1886 and 1973. That was the amendment by § 4 of Chapter 558 of the Acts of 1963 which eliminated the provision that "the said courts may likewise appoint counsel to defend any person in the trial of any criminal case in said courts whenever in the judgment of the court in which any such case is pending a just regard for the rights of the accused requires it." [5]

It was this statute, prior to its amendment in 1963, which was before the Court in *Coblentz*. Coblentz was tried and convicted on a charge that as president of a banking institution he had accepted a deposit of money when the institution was, to his knowledge, insolvent. An individual who was the private attorney for certain persons challenging on the grounds of fraud the purchase by the bank with which Coblentz was connected of one with which they had formerly been connected was alleged to have been "with the grand jury, while it was conducting its inquiry and investigation, by an ... order of court appointing him ... 'special assistant counsel for the State of Maryland,' to aid in the inquiry and examination into the subject-matter of the indictments . . . ." It was claimed that he "did hear, see, and ascertain the proceedings of the grand jury in connection with the indictments, except at the time of the grand jury's vote, all to the prejudice and detriment of

---

5. Maryland Rule 719 now provides for the appointment of counsel.

the defendant." The presence of this attorney was challenged both on the basis of the claim that he was improperly appointed as well as the fact that a conflict of interest was created. Chief Judge Bond in the opinion for the Court first referred to what was then Code (1924) Art. 10, § 27 (now, without change, Code (1957) Art. 10, § 41) which states:

"Whenever it shall become necessary from the absence, sickness, resignation or death of any State's attorney, the several courts of this State shall have power to appoint some competent person to perform the duties of State's attorney in conducting criminal or civil cases depending in such court until a State's attorney shall be appointed and qualify, or be able to attend and act in person, as the case may be, and the person so appointed shall receive the same compensation as the State's attorney."

He observed that § 27 could not be involved "because there was no absence, death, or disability of the state's attorney regularly serving, and it does not fit the description of the order passed." He said that it was Art. 26, § 7 that provided for the appointment of assistant counsel for the State "to aid in the trial of criminal or other State cases . . . whenever in the judgment of the court in which any such case is pending public interest requires it." He stated that § 7 "would make it legal for the court to appoint assistant counsel in a pending case to aid in the trial; but in [the Court's] opinion appointment under its authority could give the appointee none of the power of a state's attorney to enter and be present in the room with the grand jury while they are investigating a case with a view to possible indictment." Therefore, if the appointment in this case had been made under the provisions of Art. 26, § 11 as it existed up until December 31, 1973, we would be obliged to conclude that the holding in *Coblentz* is controlling, mandating dismissal of the indictment.

The statute in effect on February 1, 1974, the date of the

appointment of Davis, was Code (1974) § 2-102 (a) Courts and Judicial Proceedings Article which provides:

> "(a) *In general.* — If advisable in a specific proceeding, a court may appoint an auditor, surveyor, court reporter, assistant counsel for the state, counsel for a party if authorized by law or rule, accountant, master, examiner, or other officer, and may require his presence in court."

It supplanted Art. 26, § 11. In *Stack v. Marney,* 252 Md. 43, 248 A. 2d 880 (1969), Judge Barnes said for the Court:

> "It is well settled that in determining the legislative intent it will be presumed that the General Assembly is aware of previous construction of particular statutory language by this Court and if in a subsequent reenactment of the statute, the General Assembly uses the same language already construed by this Court, it intends that the same language in the reenacting legislation have the meaning we have given it. *Maryland-National Capital Park and Planning Comm'n v. Silkor Development Corp.,* 246 Md. 516, 524, 229 A. 2d 135, 140 (1967); *St. Joseph Hospital v. Quinn,* 241 Md. 371, 379, 216 A. 2d 732, 736 (1966)." *Id.* at 49.

Here, however, the same language was not used. In *Bureau of Mines v. George's Creek,* 272 Md. 143, 321 A. 2d 748 (1974), Chief Judge Murphy said for the Court:

> "[I]t is well settled that because 'the principal function of a Code is to reorganize the statutes and state them in simpler form, changes are presumed to be for the purpose of clarity rather than for a change in meaning.' *Welsh v. Kuntz,* 196 Md. 86, 97, 75 A. 2d 343 (1950). Even a change in the phraseology of a statute in a codification will not as a general rule modify the law, unless the change is so radical or material that the intention of the Legislature to modify the law appears

unmistakably from the language of the Code. *Welch v. Humphrey,* 200 Md. 410, 417, 90 A. 2d 686 (1952)." *Id.* at 155.

In this instance the change was radical and material. The intention of the General Assembly to modify the law appears unmistakably from the language of the section and from the revisor's note which states:

"This section is new language, and allows a court to appoint temporary officers when necessary for the conduct of a specific proceeding. Although several frequent appointments are listed, a blanket provision is included rather than attempting to list all possible appointments to avoid an 'inclusio unius est exclusio alterius' construction.

"This section is based on Article IV, § 9 of the Constitution which grants judges broad authority to appoint personnel and on a number of statutes and rules which provide for such appointments."

The note then goes on to refer to a number of sections pertaining to various offices including Art. 26, § 11, which was proposed for repeal. Therefore, we must examine the meaning of the term "specific proceeding" to ascertain whether it has the same meaning for purposes of this case as "aid in the trial of criminal . . . cases in said courts," as used in the former law.

In *Hale v. Henkel,* 201 U. S. 43, 26 S. Ct. 370, 50 L. Ed. 652 (1906), the Court had before it a proceeding which had been begun as a habeas corpus action to test the legality of the imprisonment of Hale pursuant to a court order adjudging him guilty of contempt for failure to produce certain documents and writings and answer certain questions before a grand jury. The inquiry proceeded under the antitrust laws. Hale had invoked the self-incrimination provisions of the Fifth Amendment. The Court said:

"The answer to this is found in a proviso to the General Appropriation Act of February 25, 1903, 32 Stat. 854, 904, that 'no person shall be prosecuted or

be subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may testify or produce evidence, documentary or otherwise, in any proceeding, suit, or prosecution under said acts,' of which the Anti Trust Law is one, providing, however, that 'no person so testifying shall be exempt from prosecution or punishment for perjury committed in so testifying.'

"While there may be some doubt whether the examination of witnesses before a grand jury is a suit or prosecution, we have no doubt that it is a 'proceeding' within the meaning of this proviso. The word should receive as wide a construction as is necessary to protect the witness in his disclosures, whenever such disclosures are made in pursuance of a judicial inquiry, whether such inquiry be instituted by a grand jury, or upon the trial of an indictment found by them. The word 'proceeding' is not a technical one, and is aptly used by courts to designate an inquiry before a grand jury. It has received this interpretation in a number of cases. *Yates v. The Queen,* 14 Q.B.D. 648 [(1885)]; *Hogan v. State,* 30 Wisconsin, 428 [(1872)]." *Id.* at 66.

That case was reported in the trial court as *In Re Hale,* 139 F. 496 (Cir. Ct. S.D. N.Y. 1905). Relative to this contention the trial judge had reasoned:

"The argument that a proceeding before a grand jury is not such a proceeding as is meant by the provision has been ingeniously presented, and is not without plausibility. But the word 'proceeding' is a broad term, and was apparently intended to include some form of judicial inquiry other than a 'suit or prosecution.' In one sense it is true a criminal proceeding is not instituted against an accused person until a formal charge is made against him by indictment or information, or a complaint before a magistrate; and proceedings before a grand jury

are not, in that sense, a criminal proceeding against an accused. Post v. United States, 161 U.S. 583, 16 Sup. Ct. 611, 40 L.Ed. 816. But in another sense any initial step before a judicial tribunal preliminary to the commencement of a civil suit or a criminal prosecution is a proceeding. As used in this statute, inasmuch as testimony given in a suit or prosecution embraces that given not only at the trial, but upon all occasions incident to the controversy, the term 'proceeding,' if limited to some step in the progress of a civil suit or a criminal prosecution which has been previously instituted, is mere tautology. A rational construction seems to require it to include any preliminary step which is incident to the institution of a civil suit or a criminal prosecution." *Id.* at 502.

Both *Hale* opinions were relied upon in *United States v. New Departure Mfg. Co.*, 195 F. 778 (W.D. N.Y. 1912). In that case a grand jury had been sworn in 1911. It made inquiries relative to the New Departure Company until an indictment was reported on January 8, 1912. The court said the "matter [came] before the court on plea in abatement . . . and present[ed] the questions whether the Judicial Code of the United States, in force January 1, 1912, repealed the prior law creating the District Court of the United States and regulating the duties of the officers and grand juries thereof, and especially whether by such act the grand jury then sitting and impaneled was deprived of its legal status and of its powers, and whether the indictment in question, reported on January 8, 1912, was improperly found, and should therefore be quashed." Section 297 of the Judicial Code repealed the statutes relative to the creation of the United States Circuit Courts and the United States District Courts, but § 299 contained a saving clause which provided in part that "all [pending] suits and proceedings, and suits and proceedings for causes arising out of acts done prior to such date, m[ight] be commenced and prosecuted within the same time, and with the same effect, as if said repeal or

amendments had not been made." The trial judge there concluded, in part, "that, as the subject-matter of the indictment in controversy was under inquiry before a grand jury properly impaneled in the District Court and engaged in the discharge of its duties, such inquiry was a 'proceeding' under section 299 of the Judicial Code." In reaching this conclusion he said in part, relying upon both *Hale* cases:

> "[T]he phrase, 'or any suit or proceeding,' contained in section 299, broadly includes an inquiry pending before a grand jury, or, indeed, any act that might be done to affect a legal right in a particular case. The word 'proceeding,' though frequently used in a restrictive sense, is, nevertheless, to be understood in its ordinary signification, unless it is qualified, as, for instance, proceedings in rem, criminal proceedings, proceedings on executions, entire proceedings, special proceedings, etc., or unless the text which contains the word denotes a different intention." *Id.* at 779-80.

In *Flanary v. Commonwealth*, 113 Va. 775, 785-86, 75 S. E. 289 (1912), the court relied upon *Hale v. Henkel, supra,* in interpreting a Virginia statute which granted immunity to witnesses under certain circumstances "in any prosecution, or other proceeding." It held "that if a witness has been called upon to testify before a grand jury in any proceeding before that body, although there may be no indictment, presentment, or information, but merely an inquiry instituted by the grand jury itself, the witness is entitled to invoke the benefits of the laws which shield him from prosecution."

*Wilson v. United States*, 77 F. 2d 236 (8th Cir.) *cert. denied*, 295 U. S. 759 (1935), concerned a former prohibition agent and former Assistant Prohibition Administrator who had been furloughed on June 30, 1933. The agent had participated in a large number of raids upon illicit manufacturers of liquor. Charges had been placed and a United States Commissioner had bound these persons over to the grand jury. After the furlough and before the grand

jury had been convened it was alleged that the former agent and former assistant administrator "sought out some of these violators against whom [the agent] had evidence and had made charges, but who were not yet indicted, and offered to have the proceedings against them dismissed or disposed of for a consideration to be forthwith paid in cash." The court said, "[T]he defendants' prices were evidently regarded as reasonable, the standard fee apparently being $10 for guaranteeing the satisfactory disposal of each offense charged, and they met with considerable success in their enterprise." The Government charged these individuals with violating a statute making it illegal for a person "being, or about to be, a witness upon a trial, hearing, or other proceeding, before any court or any officer authorized by the laws of the United States to hear evidence or take testimony [to] receive, or agree or offer to receive, a bribe, upon any agreement or understanding that his testimony shall be influenced thereby, or that he will absent himself from the trial, hearing, or other proceeding . . . ." It was contended that the statute applied "only to one who is or is about to be a witness before a court or before an officer authorized to hear evidence, and that it d[id] not apply to one who is or is about to be a witness before a grand jury; that a grand jury is neither a court nor an officer." The court said:

> "It is our conclusion that one who is or is about to be a witness before a grand jury upon a criminal proceeding pending in the United States court is a witness upon a proceeding before that court within the ordinary meaning of the words of the statute here involved. Any other construction of the statute would be not only inconsistent with the obvious purpose of Congress in enacting it, but would also be an undue restriction of its language, leading to an absurd result." *Id.* at 242.

In *People ex rel. Nuccio v. Eighth Dist. Prison Warden*, 182 Misc. 654, 45 N.Y.S.2d 230 (S. Ct., Spec. Term, Bronx County, 1943) the court held that "[a] grand jury hearing,

such jury being duly impaneled by a court of competent jurisdiction, at which witnesses are heard and evidence is presented for the purpose of returning an indictment or information against a person charged with a crime, is a proceeding within the purview of the [New York] Code of Criminal Procedure, § 618-b." That section provided in pertinent part:

"Whenever a judge of a court of record in this state is satisfied, by proof on oath, that a person residing or being in this state is a necessary and material witness for the people in a criminal action or proceeding pending in any of the courts of this state, he may, after an opportunity has been given to such person to appear before such judge and be heard in opposition thereto, order such person to enter into a written undertaking, with such sureties and in such sum as he may deem proper, to the effect that he will appear and testify at the court in which such action or proceeding may be heard or tried, and upon his neglect or refusal to comply with the order for that purpose, the judge must commit him to such place, other than a state prison, as he may deem proper, until he comply or be legally discharged. . . ."

Nuccio had sought his release by way of habeas corpus.

In *Koenck v. Cooney*, 244 Iowa 153, 55 N.W.2d 269 (1952), it was "claimed that an investigation by a grand jury in cases where there ha[d] not been a defendant bound over to that body [was] not a 'prosecution or proceedings' " within the purview of a statute granting immunity to persons compelled to testify "[i]n prosecutions or proceedings for violations of [certain] statutes . . . ." The court said:

"It is apparent that 'prosecution' and 'proceedings' are not necessarily synonymous terms. In Blakely v. Cabelka, 207 Iowa 959, 221 N.W. 451, the court was considering the meaning of the word 'proceedings' as used in the so-called 'dead man's

statute.' We said that the term was broad enough in its scope to include the operation of that judicial machinery required to accomplish the probate of a will. We think the same rule applies here and includes the operation of that judicial machinery necessary to cope with the violation of the liquor laws. A grand jury is part of that machinery. Hobson v. District Court, 188 Iowa 1062, 177 N.W. 40. Under the facts of this case, there was a 'proceedings' within the terms of the statute." *Id.* at 156.

Therefore, we conclude that when Davis was appointed "assistant counsel for the State" for the purpose of appearing before the Grand Jury of Baltimore City in connection with the presentation of evidence relative to violations by Ensor and Compton his appointment was "in a specific proceeding" within the purview of Code (1974) § 2-102, Courts and Judicial Proceedings Article. It must be remembered that in the absence of such a holding and in the absence of a directive to the Attorney General to participate in an investigation, courts would be without authority to appoint an acting prosecutor or assistant counsel for the grand jury phase of any matter since their authority to appoint under Code (1957) Art. 10, § 41 is limited to instances where the appointment is "necessary from the absence, sickness, resignation or death of any State's attorney . . . ." A disqualification by a State's attorney for any reason such as a conflict of interest or his relationship with parties to be proceeded against does not come within the purview of § 41 and the courts' hands would be tied in the absence of a directive to the Attorney General from the Governor or the General Assembly. In the view we take of this case that Davis was an assistant Attorney General is immaterial. A member of the bar with no such connection could have been appointed in the same manner.

The next question must be, however, as to whether the appointment could validly be made by a single judge since Ensor and Compton contend that because the revisor's notes

refer to Constitution Art. IV, § 9, which permits the appointment of court officers by "[t]he Judge, or Judges of any Court," with the further proviso that "such officers of the Courts in the City of Baltimore shall be appointed by the Judges of the Supreme Bench of Baltimore City" no such appointment could be made "by a single judge of the Supreme Bench without abrogating the constitutional provision upon which it is based." We do not so interpret the constitutional provision. In the counties there is one trial court of general jurisdiction, the circuit court. Judges are elected to the circuit court. In Baltimore City, however, there are six trial courts which together embrace the jurisdiction of the circuit courts in the counties, the Superior Court of Baltimore City, the Court of Common Pleas, the Baltimore City Court, the Circuit Court of Baltimore City, the Circuit Court No. 2 of Baltimore City, and the Criminal Court of Baltimore. Judges are not elected to any of those courts, but to the Supreme Bench of Baltimore City. Therefore, for the purposes of the Constitution a Baltimore City judge who makes an appointment would be a judge of the Supreme Bench of Baltimore City although he may be sitting in the Criminal Court of Baltimore.

Court is defined by Code (1974) § 2-101 (c), Courts and Judicial Proceedings Article, as "the court in which the officer serves . . . ." It will be remembered that that portion of Code (1957) Art. 26, § 11 repealed by Chapter 558 of the Acts of 1963 provided that "the said courts m[ight] likewise appoint counsel to defend any person in the trial of any criminal case in said courts," etc., which provision had existed without change since 1886. Applying the logic of Ensor and Compton here would have required that such counsel be appointed throughout the State by a majority of the duly constituted judges of the various courts. The contention has about as much substance to it as that in *Moxley v. State*, 212 Md. 280, 285-86, 129 A. 2d 392 (1957), where it was contended that a regular assistant State's attorney or a special assistant appointed by the court under Art. 26, § 11, might not prosecute a case alone. Judge Hammond commented for the Court on that subject,

"Prosecutions by Assistant State's Attorneys, unaided by the State's Attorney, take place throughout Maryland day in and day out, and have since the memory of man runneth not." Likewise, the judge or judges presiding in proceedings relative to any given case "since the memory of man runneth not" have appointed counsel for defendants without participation by other judges of the circuit or the Supreme Bench of Baltimore City prior to the advent of the public defender system.[6] Even today, in a proper case under Rule 719, such appointments are made by a single judge. If, for instance, a judge of the Seventh Judicial Circuit residing in a county other than Prince George's County were to be sitting in a case in the Circuit Court for Prince George's County, where, as a judge of that circuit, he regularly sits, and if he found it necessary to appoint a special auditor or a surveyor in a matter pending in that court, application of the logic of Ensor and Compton would require participation by a majority of the ten judges of that circuit who reside in Prince George's County. We find the contention to be untenable. For purposes of Code (1974) § 2-102 (a) Courts and Judicial Proceedings Article, a judge sitting in a court in a specific proceeding may make the appointment.[7]

We overlook neither *Murphy v. Yates*, 276 Md. 475, 348 A. 2d 837 (1975), nor *Boyer v. Thurston*, 247 Md. 279, 231 A. 2d 50 (1967), in reaching our conclusion here. *Boyer* involved

---

6. As a matter of fact, in *Moxley* the record extract filed with this Court showed that the assistant State's attorney there appointed by the court was appointed by the judge who presided at the trial of the case. Although he was the only judge who resided in that county, there were three other judges in the circuit who were judges of the Circuit Court for Howard County. Of more significance is that the record extract filed in this Court in Norvell v. Safeway Stores, Inc., 212 Md. 14, 128 A. 2d 591 (1957), reflects that the assistant State's attorney referred to by Judge Henderson for the Court at page 18 of 212 Md. as having been appointed "for the purpose of assisting in the prosecution of Nos. 868 and 869 Criminals," was appointed on April 8, 1954, by Judge Stedman Prescott in the Circuit Court for Montgomery County. At that time there were three judges in the Sixth Judicial Circuit, two of whom, Judge Prescott and Judge Charles W. Woodward, resided in Montgomery County. Judge Prescott was later Chief Judge of this Court.

7. In those rare instances today where more than one judge is sitting (as contrasted with an earlier, less busy generation when it was customary for more than one judge to sit in the trial of many cases in the counties), of course, this would mean the majority of those judges sitting in the case.

the interpretation to be given the language in Constitution Art. IV, § 25 providing that "[i]n case of a vacancy in the office of Clerk of a Circuit Court, the Judges of said Court shall have power to fill such vacancy . . . ." (Emphasis added.) Our predecessors there held:

> "[W]hen the Constitution was amended in 1953, and each county in all judicial circuits other than the First and Second was assigned one or more resident judges who held office in the circuit court for that county, then the words mentioned took on the meaning that the resident judges holding office in the circuit court when the vacancy occurred were empowered to make the appointment." *Id.* at 292-93.

That holding is in no way inconsistent with the view we here take.

In *Murphy* we held that the General Assembly could not infringe upon the powers of constitutional officers, the State's attorneys for the various counties, finding not "persuasive the contention that the duties imposed on the Special Prosecutor are concurrent with the powers of the State's Attorneys." Judge Singley said for the Court, "The simple fact is that the Special Prosecutor's power to initiate an investigation and to commence prosecution if a State's Attorney does not act is a clear invasion of the State's Attorney's most awesome discretionary power: to determine whether or not to prosecute." In this case the appointment was made at the specific request of the State's attorney. Davis thus in no way supplanted or replaced the State's attorney. There was no infringement upon the powers of the State's attorney since Davis was appointed to *assist* the State's attorney. We observed in *Williams and Fulwood v. Director,* 276 Md. 272, 347 A. 2d 179 (1975):

> "[W]here a statute is subject to two constructions, one of which will result in the legality and effectiveness of the statutory provision being construed and the other of which will make it

> illegal and nugatory, courts will prefer the construction which will result in its legality and effectiveness. *District Land v. Wash. S.S.C.*, 266 Md. 301, 312, 292 A. 2d 695 (1972). We also have held that a statute will be construed so as to avoid a conflict with the Constitution whenever that course is reasonably possible. *Deems v. Western Md. Ry.*, 247 Md. 95, 113, 231 A. 2d 514." *Id.* at 295.

Under the facts of this case, the positive request of the State's attorney that the appointment be made eliminates any possible conflict with our holding in *Murphy*. We are cognizant of the fact that there are holdings such as the one in *Dukes v. State*, 11 Ind. 557, 563 (1858), that a "Court possesses an inherent power to appoint one of the attorneys of the Court, when necessary to prevent a failure of justice, to conduct the prosecution of a criminal." *See, also, generally, Hinsdale County v. Crump*, 18 Colo. App. 59, 60, 70 P. 159, 160 (1902); *King v. State*, 43 Fla. 211, 222, 31 So. 254 (1901); *Mach v. State*, 109 Ga. App. 154, 157, 135 S.E.2d 467 (1964); *Latham v. Spencer*, 244 Ind. 552, 557, 194 N.E.2d 606, 609 (1963); *White v. Polk County*, 17 Iowa 413, 414-15 (1864); *Tesh v. Commonwealth*, 4 Dana 522, 528 (Ky. 1836); *Commonwealth v. Scott*, 123 Mass. 222, 233, 234 (1877); *State v. Moxley*, 102 Mo. 374, 384, 14 S.W. 969 (1890) ("And aside from statutory provisions, such as those quoted, the power thus to appoint a temporary representative of the state, one armed with full authority to discharge in full the office he temporarily fills, is of necessity *an inherent power* in courts of justice. The authorities abundantly sustain this view." (Citing authorities.) (Emphasis in original.)); *Guinther v. Milwaukee*, 217 Wis. 334, 258 N. W. 865 (1935); J. Bishop, *New Criminal Procedure* § 282 (1913); L. Hochheimer, *Law of Crimes and Criminal Procedure* § 135 (1897); and 3 Wharton, *Criminal Procedure* § 419 at 139 (12th ed. Torcia 1975) ("Discretion ordinarily resides in the court to order the employment of counsel to assist the prosecution or to appoint special counsel where the prosecution declines to act."). For the purpose of deciding this case, however, it is not necessary to focus upon the doctrine of inherent power.

We thus conclude that in the circumstances of this case in which the State's attorney requested the appointment it was entirely proper for Davis to appear before the grand jury.[8] Accordingly, this case must be remanded to the Criminal Court of Baltimore for trial, subject, of course, to any other legitimate pretrial proceedings.

> *Judgment reversed and case remanded to the Court of Special Appeals for further remand to the Criminal Court of Baltimore for further proceedings consistent with this opinion; appellees to pay the costs.*

---

**8.** This opinion should not be read as going beyond the facts of this case in determining when it is proper for a trial judge to appoint "assistant counsel for the State" pursuant to the provisions of Code (1974) § 2-102 (a) Courts and Judicial Proceedings Article since any such appointment must be reconciled with Murphy v. Yates, supra.