## IN RE: JOHN H.

[No. 113, September Term, 1981.]

*Decided April 6, 1982.*

*Motion for reconsideration filed April 30, 1982; denied May 3, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Peter S. Smith* for appellant.

*Patricia E. McDonald, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

We took this case primarily to decide the constitutionality of Maryland Code (1974, 1980 Repl. Vol.) § 3-829, Courts and Judicial Proceedings Article. This section permits the imposition of vicarious liability upon parents for their children's wilful or malicious damage to others' property. We shall not reach that interesting question because we find that it was not preserved for appellate review.

In addition to the statute's unconstitutionality, the parents of John H. contend that the Circuit Court for Baltimore County and the Court of Special Appeals erred in holding that the section in question authorizes restitution in favor of an agency of government; that the Court of Special Appeals erred in concluding that the incidents which occurred in 1979 were governed by a 1980 revision of the statute; and that both courts erred in permitting restitution in the amount of $10,000 for damages occurring at two different schools in the evening and early morning hours of November 10-11, 1979, because the "acts" all arose out of a single incident and hence liability should not have exceeded the statutory maximum of $5,000 for each incident. We shall affirm the judgment of the Court of Special Appeals contained in *In re John H.,* 49 Md. App. 595, 433 A.2d 1239 (1981), although our reasoning will differ somewhat.

## i The facts

It was agreed in the juvenile proceeding that John H. and another youth entered a Baltimore County elementary

school between the hours of 6:00 p.m. on Saturday, October 13, 1979, and 9:00 a.m. on Sunday, October 14, 1979, where "piles of desks stacked in the hallway were knocked over and damaged, five hallway light fixtures were destroyed, fire extinguishers were taken off the wall and their contents sprayed over the wall and floor, classroom door windows were broken, [and] students' pictures on a hallway bulletin board were torn and thrown on the floor." It was further agreed that "[b]etween November 10, 1979, at approximately 8:00 or 9:00 p.m. and November 11, 1979, at approximately 4:20 a.m.," this juvenile and another "broke out a one by two foot window in a door on the south side [of a Baltimore County elementary school] and tripped the panic bar to gain further entry to the building. Once inside the school, [they set about] ransacking and destroying classrooms, various offices and work rooms, flooding several areas by stopping up sinks and turning water on, breaking chairs, throwing paint on walls and floors, setting fire to a classroom closet and setting fire to the auditorium where parts of the stage were burned completely through. Various clocks throughout the school were stopped at 4:20 a.m., damages having been discovered on November 11, 1979, at 7:14 a.m." The parties also agreed that "[o]n November 11, 1979, between 2:00 a.m. and 3:00 a.m. [the juveniles] entered [a junior high school at another location] by breaking out a glass window, unlocking same and entering. Once inside the school [their actions included] damaging and destroying furniture in offices, lounges and classrooms, plugging up sinks and flooding various areas of the school. Various clocks of the school were damaged and stopped at hours between 2:00 a.m. and 3:00 a.m., damages having been discovered on November 11, 1979, at 7:32 a.m." At the time of the hearing "[t]otal damage estimates range[d] from $200,000.00 and $400,000.00 . . . ."

After John H. was adjudged a delinquent by virtue of these acts, the State filed three petitions against his parents seeking judgments of restitution against them for their child's acts. Ultimately, a judgment of restitution in the amount of $10,100 was entered against the parents.

## ii The statute

At the time of the expeditions in question, Code (1974, 1980 Repl. Vol.) § 3-829, Courts and Judicial Proceedings Article, provided that a court might "enter a judgment of restitution to the wronged person against the parent or parents of the child," with a limit of $5,000 "for all acts arising out of a single incident" where the court found that a child had "wilfully or maliciously . . . stolen, damaged, or destroyed the property of another . . . ."[1]

From its statutory history the parents contend that this section, which provides for "judgment of restitution to the wronged person," is not applicable to a governmental entity. The Court of Special Appeals met that argument by pointing

---

1. The complete statute states:

"(a) In any case in which the court finds that a child has, wilfully or maliciously, either (i) stolen, damaged or destroyed the property of another, or (ii) inflicted personal injury on another, requiring the injured person to incur medical, dental or hospital expenses, the court may enter a judgment of restitution to the wronged person against the parent or parents of the child.

"(b) A judgment rendered under this section may not exceed

"(1) As to property stolen or destroyed, the lesser of the fair market value of the property or $5,000.

"(2) As to property damaged, the lesser of the amount of damage not to exceed the fair market value of the property damaged or $5,000.

"(3) As to personal injuries, inflicted, the lesser of the reasonable medical, dental, and hospital expenses incurred by the injured person as a result of the injury or $5,000.

"(4) As an absolute limit against any one child or his parents, $5,000 for all acts arising out of a single incident.

"(c) A judgment of restitution against a parent may not be entered unless the parent has been afforded a reasonable opportunity to be heard and to present appropriate evidence in his behalf. A hearing under this section may be held as part of the adjudicatory or disposition hearing for the child.

"(d) The judgment may be enforced in the same manner as enforcing monetary judgments.

"(e) The court may order the child who, wilfully or maliciously, steals, damages, or destroys the property of another or inflicts personal injury on another to make the restitution expenses himself if that is feasible considering the age and circumstances of the child; and if this is ordered, the liability of the child precedes the liability of the parent. The court may, in the alternative, enter a judgment of restitution against the child."

out that the judgment of restitution was entered after the effective date of Ch. 409 of the Acts of 1980. That revision eliminated the wording relative to a "wronged person" and provided that the court might "enter a judgment of restitution against the parent of a child . . . in any case in which the court f[ound that] a child ha[d] committed a delinquent act" during which commission he had "[s]tolen, damaged, or destroyed the property of another . . . ." The court said:

> "Lest there be any concern that we are governed in our review of this case by the 1980 version of § 3-829, we observe that it went into effect on July 1, 1980. The judgment against the appellants was entered on November 13, 1980, and, accordingly, had to be imposed in accordance with the provisions of the then existing law. *See Stephens v. Dixon,* 30 Md. App. 56, 66 (1976)." 49 Md. App. at 604.

In the view we take of this case, however, we are not obliged to address the question of whether the Court of Special Appeals has correctly applied cases such as *Cooper v. Wicomico County,* 278 Md. 596, 600, 366 A.2d 55 (1976); *Unsatisfied Fund v. Bowman,* 249 Md. 705, 708, 241 A.2d 714 (1968); *Janda v. General Motors,* 237 Md. 161, 168-70, 205 A.2d 228 (1964); and *Bell v. State,* 236 Md. 356, 363-64, 204 A.2d 54 (1964), relative to the retrospective application of statutes. *Cf. McClain v. State,* 288 Md. 456, 464, 419 A.2d 369 (1980).

The parents assert, and we believe correctly so, that the concept of parental liability for their children's acts came into the Maryland law through a statute applicable only to Montgomery County. That county had and continues to have a system for handling juveniles different from the rest of the State. See Code (1974, 1980 Repl. Vol.) § 3-801 (i), Courts and Judicial Proceedings Article, which provides that it is the circuit courts in twenty-two of the counties of this State and in Baltimore City which sit in juvenile matters, while in Montgomery County it is the District Court. Prior to the advent of the District Court, a judge of the People's Court of Montgomery County was designated to handle juvenile

causes. Chapter 151 of the Acts of 1955 enacted provisions of Code (1951, 1955 Cum. Supp.) Art. 26, §§ 70A-70S with provisions for a People's Court judge to sit in juvenile matters, supplanting at that time the former provisions of Montgomery County Code (1939) §§ 547A-547S which provided for a magistrate for juvenile causes. Code (1957, 1959 Cum. Supp.) Art. 26, § 76 (i) as enacted by Ch. 608 of the Acts of 1959 directed that the judge should "have power to require any parent to make restitution for acts of destruction or theft of any property owned by another, caused or committed by the minor child of such parent," with a limitation of $500.

The General Assembly enacted Ch. 260 of the Acts of 1965 as Code (1957, 1965 Cum. Supp.) Art. 26, § 71A, applicable statewide except in Montgomery County. Section 71A specified that a judge sitting in a juvenile matter might, "in his discretion, have power to award a judgment in favor of a wronged person and against any parent for acts of wilful of malicious destruction or theft of any property owned by such wronged person, caused or committed by the minor child of such parent," with a $500 limitation on liability. Chapter 267 of the Acts of 1972 amended § 71A to state that the award might be "in favor of a wronged person, partnership, corporation or other business entity, or the federal, State or local government or any agency thereof . . . ." The Montgomery County provisions continued to refer to "any property owned by another . . . ."

The juvenile laws were revised with the enactment of the Courts and Judicial Proceedings Article by Ch. 2 of the First Special Session of 1973. The general juvenile law in § 3-839 (a) provided that a judge might "award a judgment in favor of a *wronged person* and against a parent for acts of willful or malicious destruction or theft of any property owned by the *wronged person* . . . ." (Emphasis added.) The reference in § 3-839 (b) was to an order requiring "the parent to make restitution to the *person* whose property has been destroyed or stolen . . . ." (Emphasis added.) Thus, the language relative to governmental entities and the like was deleted,

giving rise to the argument which is made here. The provision applicable to Montgomery County juveniles was found in § 4-518. This section provided that the court might "require the parent of any child who steals or destroys the property of another, or willfully and maliciously inflicts personal injury on another to make restitution." The Revisor's Note to § 3-839 states that the section "is new language derived from Article 26, § 71A, as amended by ch. 651, Acts of 1973." That 1973 amendment left intact the language relative to governmental entities and the like. We point out that this amendment was enacted at the regular session of the General Assembly, while the revised code came at a subsequent special session. The present § 3-829 dates from the enactment of Ch. 554 of the Acts of 1975 which brought together the juvenile provisions relative to Montgomery County and the remainder of the State, although, as heretofore indicated, juvenile cases are handled in that county by the District Court.

The parents argue here that the history of the restitution provision shows that an agency of the government may not recover under the statute, and state further:

> "Plainly, the legislature knows precisely how to indicate its desire to include government within the terms of the restitution statute if it so desires. It so desired in 1972. Unless one is to assume that the legislature exercises that desire whether it says so or not — which would seem to render its 1972 action superfluous — this Court should conclude that in its major revision in 1975, the legislature decided to proceed on this issue as it had prior to 1972."

The parents, however, overlook three things. First, the change in question came not with the 1975 enactment but with the code revision in 1973. Secondly, the principal function of a code of laws is to reorganize the statutes and to state them in a more orderly, simple, and comprehensible form. A mere change in phraseology does not change the operation and effect or meaning of the statutes unless a legislative intention to make such change is clear and unmistakeable.

*See, e.g., Board v. Stephans,* 286 Md. 384, 396-97, 408 A.2d 1017 (1979); *State v. Huston,* 281 Md. 455, 458, 379 A.2d 1027 (1977); *State v. Ensor and Compton,* 277 Md. 529, 541-42, 356 A.2d 259 (1976); *Bureau of Mines v. George's Creek,* 272 Md. 143, 154-55, 321 A.2d 748 (1974); and *Welch v. Humphrey,* 200 Md. 410, 417, 90 A.2d 686 (1952). Thirdly, Art. 1 of our Code contains rules of interpretation. Code (1957) Art. 1, § 15 provides, "The word person shall include corporation, unless such a construction would be unreasonable." The only caveat to this rule of interpretation which this Court has expressed is that the construction specified in § 15 may not override legislative intent. *See, e.g., State Tax Commis. v. Harrington,* 126 Md. 157, 167-68, 94 A. 537 (1915); *Keller v. State,* 122 Md. 677, 682-83, 90 A. 603 (1914); and *Shehan v. Tanenbaum, Son & Co.,* 121 Md. 283, 286, 88 A. 146 (1913). We find no such clear intent here. Code (1978) § 3-104(a), Education Article, provides, "Each county board is a body politic and corporate by the name of the Board of Education of . . . . . . . . County." County boards of education have been so regarded since enactment of Ch. 377 of the Acts of 1872. *See McCarthy v. Bd. of Education of A. A. Co.,* 280 Md. 634, 642, 374 A.2d 1135 (1977).

Given the principles relative to code revision and the Code's rules of interpretation, it is probable that when the language relative to governmental entities and the like was deleted from the statute in the process of code revision, the Legislature regarded this language as unnecessary in light of Art. 1, § 15. Accordingly, we now hold that the Board of Education of Baltimore County is a "wronged person" within the meaning of the statute.

### iii The incidents

The incidents in question took place at two different schools. It is conceded that the schools were not immediately adjacent to each other, that they were not on the same tract of land, and that they were a block or more apart. As the recital of agreed facts demonstrates, the depredations did

not take place at the same time. Therefore, it follows that they constitute two separate incidents and that the trial judge did not err in assessing the maximum amount permitted under the statute for each of these two incidents.

### iv Constitutionality

We observe in passing that the courts are not in agreement on this issue. See Annots., 54 A.L.R.3d 974, 1020-24 (1973), and 8 A.L.R.3d 612 (1966). Judge Menchine wrote a scholarly opinion for the Court of Special Appeals in *Matter of Sorrell,* 20 Md. App. 179, 185-89, 315 A.2d 110, *cert. denied,* 271 Md. 740, 744 (1974), upholding the validity of Art. 26, § 71A against an attack similar to that here mounted against § 3-829. The Supreme Court of Georgia, however, held such a statute unconstitutional in *Corley v. Lewless,* 227 Ga. 745, 182 S.E.2d 766 (1971). Statutes requiring parents to make restitution have been upheld in *Vanthournout v. Burge,* 69 Ill. App. 3d 193, 387 N.E.2d 341 (1979); *Piscataway Tp. Bd. of Ed. v. Caffiero,* 86 N.J. 308, 431 A.2d 799, *appeal dismissed for want of a substantial federal question,* 102 S. Ct. 560 (1981); *Insurance Co. v. Faulkner,* 259 N.C. 317, 130 S.E.2d 645 (1963); *Rudnay v. Corbett,* 53 Ohio App. 2d 311, 374 N.E.2d 171 (1977); *Kelly v. Williams,* 346 S.W.2d 434 (Tex. Civ. App. 1961); and *Mahaney v. Hunter Enterprises, Inc.,* 426 P.2d 442 (Wyo. 1967). We are not to be understood by having listed the cases relative to this point as either agreeing or disagreeing with any of them.

Maryland Rule 885 provides, "This Court will not ordinarily decide any point or question which does not plainly appear by the record to have been tried and decided by the circuit court . . . ." The parents did not argue the issue of constitutionality to the trial judge. Accordingly, we decline to pass upon the issue, leaving that interesting question to another day in a case where the issue is squarely presented.

*Judgment affirmed; appellants to pay the costs.*